**WYNDHAM HOTEL COMPANY,**
Appellant,

v.

**Opal SELF, Appellee.**

No. 13–93–329–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 29, 1994.

Rehearing Overruled Feb. 2, 1995.

Paul Dodson, White, Huseman, Pletcher & Powers, Corpus Christi, for appellant.

Terry E. Baiamonte, Angelina Beltrane, Edwards & Terry, William R. Edwards, III, Edwards, Terry, Baiamonte & Edwards, Corpus Christi, Burton M. Greenberg, Greenberg and Pleban, St. Louis, for appellee.

Before KENNEDY, GILBERTO HINOJOSA and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is an appeal from a judgment in favor of the plaintiff in a personal injury lawsuit tried before a jury. In the trial below, Opal Self sued the Wyndham Hotel Company under theories of recovery involving negligence, *respondeat superior*, ostensible agency, and negligent entrustment. In six points of error, Wyndham challenges the trial court's charge to the jury, the sufficiency of the evidence, the rendition of judgment based on the verdict, and the award of prejudgment interest. We affirm.

## I. FACTS

Over the Thanksgiving holiday of 1986, Self visited the Bahamas with her daughter, Linda Paul, and grandson, Daniel. Self and her family stayed at the Wyndham Cable Beach Hotel, which is run by Wyndham but ultimately owned by the Bahamian government. As part of the comprehensive vacation package, Wyndham provided transportation between the airport and hotel. Some guests travelled to the hotel in the Wyndham Hotel van, but others were transported by unmarked taxis.

Once at the hotel, Self saw Wyndham advertisements that described the water sports facilities among the other activities offered by the hotel. These advertisements were located both in the hotel lobby and in a brochure left in Self's hotel room. A rating card that invited Wyndham guests to evaluate and comment on the hotel's various facilities also mentioned the water sports activities as a feature of the Wyndham Hotel.

Because Daniel was interested in snorkeling, which was an activity advertised in the brochure, Linda went to the front desk of the Wyndham Hotel to inquire about the water sport offerings. The clerk at the front desk told Linda that snorkeling was included in the glass-bottomed boat tour, which departed from the hotel's private pier. The clerk also explained that Linda could get tickets for the boat tour from the Watersports Center in the hotel courtyard and that Linda could charge the ticket price to her hotel bill.

Self spent part of the next morning by the pool with her family. Whenever they wanted another Wyndham Hotel insignia towel or an additional deck chair, they were required to sign for the item at the Watersports Center, which itself bore the Wyndham logo. All the Wyndham employees working in the courtyard wore tan pants with brown and orange tropical print shirts; the persons working at the Watersports Center were dressed identically.

Later that morning, a man dressed in tan pants with an orange and brown tropical print shirt approached several of the Wyndham Hotel guests. This man, Basil Palmer, asked if any of the guests were interested in the glass-bottomed boat tour. When Self explained that she and Daniel wished to join the tour, Palmer led Self to the Watersports Center to purchase tickets. With Palmer standing right beside her, Self gave her hotel room number and received a receipt from the woman behind the counter at the Watersports Center. Palmer explained that the boat tour would depart from the Wyndham Hotel's private pier.

After Self, Daniel, and several other Wyndham Hotel guests had congregated at the hotel's pier, Palmer arrived to say that there had been a change in plans. Palmer explained that the tour group would have to leave from a pier in town, but that he had arranged transportation, which would be included in the original price for the tour. Palmer led the group to the Watersports Center so that they could sign for snorkeling equipment and towels, and then he led them through the Wyndham Hotel lobby to his waiting car. Like some of the taxis that Wyndham used to transport guests from the

airport to the hotel, Palmer's car was not marked. As Palmer ushered the guests into his car, there was some dispute regarding the driver, Clifford Stubbs. Stubbs's lack of a current driver's license and the possibility that Stubbs had been drinking were specifically discussed. In any event Palmer's car crashed through Stubbs's negligence, and Self was injured.

Self asserted that Palmer was negligent in entrusting Stubbs with the car; under theories of ostensible agency and *respondeat superior*, Self attributed this negligence to Wyndham. As part of its defense to this cause of action, Wyndham countered that Palmer was working as a freelance operator when he approached Self and the other guests. In response to this defense, Self amended her petition to allege Wyndham's more general negligence in failing to keep such freelance solicitors from preying on Wyndham's guests. Self also pursued Wyndham under the Deceptive Trade Practices—Consumer Protection Act, but the trial court granted Wyndham's pretrial motion for summary judgment on this claim.

The jury found that Palmer was not a Wyndham employee, but that he was acting as an agent of Wyndham on the occasion in question. The jury also found that Palmer was negligent in entrusting Stubbs with the car. Significantly, the jury was not asked whether Palmer was acting within the apparent scope of the ostensible agency when he entrusted Stubbs with the car. This omission is notable in light of the jury finding that absolved Wyndham of negligence in failing to prevent Palmer from entrusting Stubbs with the car. Finally, when asked to apportion the responsibility for Self's injuries, the jury assigned 50% of the negligence to Wyndham, 20% each to Palmer and Stubbs, and 10% to Self. Based on these findings, the trial court ordered that Wyndham pay 90% of Self's damage award; 10% was deducted to account for Self's comparative negligence.

## II. JURY CHARGE

In its second and fourth points of error, Wyndham complains of jury question two, which asked if there was an agency relationship between Palmer and Wyndham at the time of Self's injury. Wyndham's second point concerns the omission of an instruction on the scope of any ostensible agency, and Wyndham's fourth point argues that the question misstates the law. Wyndham contends that we are obliged to render a take-nothing judgment as a result of these errors. We disagree.

### A. The Law of Agency by Estoppel

The court submitted the issue as follows:

On the occasion in question, was there an agency relationship between Basil Palmer and Wyndham Hotel Company?

You are instructed that an agency relationship existed if either of the following circumstances occurred:

A. If the Wyndham Hotel Company, acting through its employees and agents, represented by act, conduct or statement that Basil Palmer was its employee or agent, and there was a reliance by Opal Self on the representation, if any, and the representation caused a change of position by Opal Self.

OR

B. If Opal Self consented to the boat ride in question on the reasonable belief that Basil Palmer was the employee or agent of Wyndham Hotel Company, and the Wyndham Hotel Company intentionally or negligently caused such belief, or the Wyndham Hotel Company knew of such belief but failed to notify Opal Self that her belief was mistaken.

ANSWER "yes" or "no."

During the charge conference, Wyndham objected that this question was incomplete without a definition to explain the course and scope of any ostensible agency. Wyndham also complained that the question, as submitted, did not allow the jury to consider whether Palmer's negligent actions exceeded his apparent authority.

In Texas, the leading case on apparent authority explains the theory of recovery as follows:

The doctrine of apparent authority is based on estoppel, and one seeking to

charge a principal through the apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise.

*Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422, 427 (1953); *see also Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex. 1984) (apparent authority may also rise from principal's actions that are so careless as to clothe the ostensible agent with indicia of authority that led the plaintiff to reasonably believe in the agent's authority); *Rourke v. Garza,* 530 S.W.2d 794, 803 (Tex.1975) (principals may be estopped from denying apparent authority when they fail to act in light of facts sufficient to put them upon inquiry that would have revealed plaintiff's reasonable belief in the ostensible agency).

■ Nevertheless, a cause of action based on agency by estoppel does not necessarily require a separate finding that the ostensible agent was acting within the scope of apparent authority. Instead, Texas law allows the plaintiff to prove the following three elements: (1) the party must have a reasonable belief in the agent's authority, (2) that belief must derive from some representation by act or omission of the principal, and (3) the party's detrimental reliance on this representation of authority must be justifiable. *Nicholson v. Memorial Hosp. Sys.,* 722 S.W.2d 746, 750 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *Ames,* 672 S.W.2d at 450 and *Brownsville Medical Ctr. v. Gracia,* 704 S.W.2d 68, 74–75 (Tex.App.— Corpus Christi 1985, writ ref'd n.r.e.)).

■ The jury's determinations of whether the party's belief in the agency was reasonable and whether the party's reliance on that belief was justifiable subsumes the scope-of-agency issue. *Cf. Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981) (discussing the relationship between the basis for agency by estoppel and the apparent scope of such ostensible authority). This approach to agency by estoppel reflects the fact that an *ostensible* agency relationship is not a *true* agency relationship with a predefined scope. *See Id.* ("Apparent

authority provides authorization where the actual authority of the agent is lacking.") In Texas, the plaintiff may dispense with the fiction of defining the terms of a relationship that does not exist in reality. Under this formulation of the theory, actions beyond the scope of any hypothetical agency are addressed in terms of whether the party's belief and consequent reliance were reasonable and justified.

■ By agreement, however, this issue was tried with reference to the law of the Bahamas, which is English common law for all purposes relevant to the suit. The English law of agency by estoppel was recently revisited by the Court of Appeal, Civil Division, which reiterated the long-held principle:

An "apparent" or "ostensible" authority ... is a legal relationship between the principal and the contractor created by a representation, made by the principal to the contractor, intended to be and in fact acted upon by the contractor, that the agent has the authority to enter on behalf of the principal into a contract of a kind within the scope of the "apparent" authority, so as to render the principal liable to perform any obligations imposed on him by such contract.

*Lease Management Servs. Ltd. v. Purnell Servs. Ltd.,* 13 Tr.L. 337 (Eng.C.A.) (1994) (quoting *Freeman & Lockyer v. Buckhurst Park Properties (Mangal) Ltd.,* 1 All E.R. 630 (Eng.C.A.) (1964)). As applied to facts similar to the facts of the instant case, this principle of law underlies the decision in *Soanes v. London & S.W. Rail Co.,* 88 L.J.K.B. 524 (Eng.C.A.) (1919), which was cited with approval by the Court of Appeal in *Lease Management Services.*

In *Soanes,* the plaintiff sued the rail company for the loss of his suitcase. The plaintiff, who was on crutches at the time, went to Waterloo train station at the location designated for arriving passengers. A man dressed in the rail company porter's uniform took the plaintiff's baggage and accompanied the plaintiff past the point where only ticketed passengers and company employees were allowed. When the plaintiff learned that he would have to catch a later train, the man in

the porter's uniform agreed to hold the suitcases while the plaintiff waited in the cafe. The man in the porter's uniform left the baggage unattended just outside the ticketing office. By the time of the later train's departure, one of the plaintiff's two bags was stolen. The rail company denied responsibility on grounds that the man in the porter's uniform was a porter at the company's Hampton station and not authorized to work at Waterloo. The rail company claimed that the porter was off duty and outside the scope of employment and, therefore, working freelance either because of sympathy for the plaintiff on crutches or in hope of a tip.

Because the man in the porter's uniform was outside the scope of his authority, the county court judge ruled in favor of the rail company. On appeal, the divisional court reversed this judgment because the porter was a general agent of the rail company and the company had not prohibited the disputed exercise of the porter's authority. The Court of Appeal affirmed the divisional court judgment but offered a different rationale. The high court held that the company's careless failure to prevent the actions of the man in the porter's uniform amounted to a representation that the man was a porter.

As evidence of this negligent representation, the Court of Appeal looked to the fact that the porter was not questioned by the company employees as he accompanied the plaintiff onto the train. The court also considered that the company allowed the porter to present himself in uniform at the place where porters were employed in the very manner that the plaintiff employed the disputed porter.

In light of *Lease Management Services* and *Soanes,* we cannot say that the charge submitted by the trial court reflects every aspect of the law that might be considered an element of a claim. Under *Lease Management Services,* Self should have been required to show that Palmer's negligent entrustment was an act within the apparent scope of his ostensible agency relationship with Wyndham. *Lease Management Servs.,* 13 Tr.L. 337; *cf. Soanes,* 88 L.J.K.B. 524 (the Court of Appeal specifically noted that Soanes entrusted the ostensible porter with

tasks that are the ordinary duties of a porter). Significantly, however, the *Lease Management Services* court did not explicitly require any evidence regarding the reasonableness of the plaintiff's belief in the ostensible agency.

Under Texas law, as we noted above, the issue of whether the party's belief in the ostensible agency was reasonable subsumes much of the issue regarding the apparent nature of the agency. Nevertheless, replacing the scope-of-apparent-authority element with a finding that the belief in the ostensible agency was reasonable is a change unwarranted under English or Bahamian law. But this defect in the submission of the issue is not necessarily reversible error.

## B. Consequence of Defective Submission

■ Unless a ground of recovery or defense is conclusively proved, failure to submit at least some element of that ground will waive that theory of recovery or defense. Tex.R.Civ.P. 279. If a party submits some but not all of the controlling issues under a theory, the adverse party must object to the omission or face the possibility of a deemed finding on any omitted elements. *Id.; Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990) (failure to either object to the omission of an element or request a prejudgment judicial finding on the omitted element requires that the reviewing court deem all findings supported by evidence and necessary to uphold the judgment).

■ Rendition against a party with the burden of obtaining a finding is proper when that party refuses to submit any question on a controlling issue after the adverse party has properly objected. *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994). Unless the party with the burden of obtaining a finding has totally failed to submit a question on a controlling fact issue, remand for a new trial is usually the appropriate remedy. *Id.* at 157–58. In the context of a party's burden of presenting its case to the jury, the defective submission of an issue is not to be considered a total failure to submit that issue. *Id.*

■ Before we reach any resolution of these matters, however, we must ascertain whether the omitted question was "conclusively established under the evidence." Tex. R.Civ.P. 279. When an issue is established as a matter of law, the trial court need not submit that issue in a question to the jury. *Washington v. Reliable Life Ins. Co.*, 581 S.W.2d 153, 157 (Tex.1979); *cf. Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986) (absent harm, jury charge error is not reversible).

In the instant case, all the evidence indicates that Palmer was acting within the *apparent* scope of the ostensible agency when he negligently entrusted his car and the passengers to Stubbs. In addition to testimony from Self and her daughter, the jury heard testimony from two other Wyndham Hotel guests who were solicited by Palmer to join the glass-bottomed boat tour. Each witness who testified regarding Palmer's conduct confirmed that Palmer *appeared* to be an agent of the hotel responsible for coordinating water sports activities. Wyndham presented nothing to controvert this convincing evidence from the disinterested witnesses who testified about the scope of Palmer's *apparent* authority.

Certainly, Wyndham presented evidence that Palmer was not a Wyndham employee and that Palmer's actions were beyond the scope of any *actual* relationship with Wyndham. But evidence regarding the scope and existence of the actual relationship between Palmer and Wyndham has no bearing on the *apparent* scope of the *ostensible* agency relationship. *See, e.g., Soanes*, 88 L.J.K.B. 524 (the English Court of Appeal implicitly found that the ostensible porter was acting within the scope of apparent authority after explicitly noting that "there can be no appeal 'from that question of fact that the porter was acting outside the scope of his authority'").

Because Wyndham presented no evidence to rebut the unanimous testimony from every witness who addressed the issue of Palmer's apparent authority, submission of this issue was unnecessary. *See* Tex.R.Civ.P. 279; *Washington*, 581 S.W.2d at 157. As a result, the faulty submission of the issue to inquire whether Self's belief in the ostensible agency

was reasonable instead of asking about the scope of Palmer's apparent authority was harmless error. *See Island Recreational Dev.*, 710 S.W.2d at 555 (error in the jury charge is not reversible unless the error probably caused the rendition of an improper judgment).

The question submitted by the court was flawed under both Texas and Bahamian law, but the omission of an instruction on the apparent scope of agency cannot serve as grounds for reversal. Accordingly, we overrule Wyndham's second point of error.

### C. Phrasing of the Question

■ Wyndham's fourth point of error argues that jury question two was further marred by the inclusion of the phrase "change of position," which Wyndham considers insufficiently specific. At the charge conference, Wyndham objected that this phrase might allow the jury to consider any change of Self's position as a basis for finding that Palmer was an agent of Wyndham.

As submitted by the court, however, the question did limit which "change of position" the jury could consider as the basis for its finding. The trial court employed language that explicitly required the jury to consider only "the occasion in question" when answering the agency question. Consequently, Wyndham's point of error challenges the specific language employed by the trial court.

Wyndham cites no authority, under the law of Texas or the Bahamas, to suggest this language is inadequate to meet Wyndham's specific concern regarding the relevant change in Self's position. We note, however, that the supreme court has repeatedly condoned jury questions that have used this phrase to limit the scope of the jury's inquiry. *See, e.g., Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 n. 2 (Tex.1992) (the supreme court approved a premises liability question that began "On the occasion in question"); *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex.1987) (in setting out the elements of negligent entrustment, the supreme court defines one element with the words, "that the driver was negligent on the occasion in question").

The trial court enjoys very broad discretion in deciding how to frame the issues submitted to the jury. *Island Recreational Dev.*, 710 S.W.2d at 554–55; *Haas Drilling Co. v. First Nat'l Bank*, 456 S.W.2d 886, 889 (Tex.1970); *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 488–89 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) (citing Tex.R.Civ.P. 277). In its effort to present the disputed issues fairly and unambiguously, the court may submit issues by any combination of questions, instructions, and definitions. *See Borden, Inc. v. Rios*, 850 S.W.2d 821, 827–28 (Tex.App.—Corpus Christi), *judgment set aside by agr. without reference to merits*, 859 S.W.2d 70, 71 (Tex.1993); *Wright Way Constr. v. Harlingen Mall Co.*, 799 S.W.2d 415, 422 (Tex.App.—Corpus Christi 1990, writ denied) (citing Tex.R.Civ.P. 278). Besides the guidelines set by the Texas Rules of Civil Procedure and the relevant caselaw, the court's discretion in drawing the charge is limited only by the pleadings and the evidence. *See* Tex.R.Civ.P. 271–279; *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *Borden*, 850 S.W.2d at 827; *Wright Way Constr.*, 799 S.W.2d at 422.

Other than its unsupported contention that the trial court's wording of the question misstates the relevant law, Wyndham offers no indication of how the trial court abused its broad discretion. Absent some sign of an abuse of discretion, we will not reverse the trial court merely for refusing a similarly worded instruction. *See* Tex.R.Civ.P. 278; *Sheldon L. Pollack Corp. v. Falcon Indus.*, 794 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied). Consequently, we overrule Wyndham's fourth point of error.

## III. SUFFICIENCY OF THE EVIDENCE

In its third point of error, Wyndham contests the legal and factual sufficiency of the evidence that Palmer's acts fell within the apparent scope of the ostensible agency. But much of the evidence regarding the apparent scope and nature of Palmer's ostensible relationship with Wyndham was not effectively contested.

Wyndham advertised a boat tour that left from the hotel's private pier. The clerk working at the front desk in the hotel lobby explained that boating tickets were for sale at the Watersports Center in the courtyard and that the tickets could be charged to the guest's hotel bill. While dressed in a manner similar to the Wyndham employees, Palmer approached several Wyndham guests and asked if they would care to join the boat tour. Palmer led Self to the Watersports Center so that she could purchase tickets for the boat tour that was scheduled to leave from Wyndham's private pier, as advertised. When circumstances prevented the boat tour from leaving from Wyndham's private pier, Palmer explained that he had arranged for transportation to a pier in downtown Nassau. The tour participants were not charged for this transportation, which was included in the price for the boat tour. Palmer led the tour participants to the Watersports Center to sign for equipment, and then led the participants through the Wyndham lobby to the waiting car. In addition to Self, several other Wyndham guests believed that Palmer was an agent of Wyndham.

Under *Soanes*, these circumstances are some evidence to support a finding that Palmer was an ostensible agent of Wyndham with the authority to book and organize activities for Wyndham guests. *See Soanes*, 88 L.J.K.B. 524 (agency by estoppel established by the fact that the rail company allowed the ostensible agent to present himself as a porter plus the fact that the rail company's employees treated the ostensible agent as a porter plus the fact that the plaintiff employed the ostensible agent in the manner that porters are usually employed). Accordingly, we cannot sustain Wyndham's contention that Self adduced no evidence on this issue. *See Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993) (discussing review of "no evidence" arguments); *Housing Auth. of Corpus Christi v. Massey*, 878 S.W.2d 624, 627 (Tex.App.—Corpus Christi 1994, n.w.h.) (citing *Weirich v. Weirich*, 833 S.W.2d 942, 945–46 (Tex.1992) for requirements of legal sufficiency review).

Under Wyndham's factual sufficiency contest, we review this evidence in light of the

entire record to see if it is so weak that a proper finding of agency would have been clearly wrong. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Twenty–Four Thousand One Hundred Eighty Dollars in U.S. Currency v. State,* 865 S.W.2d 181, 185 (Tex.App.—Corpus Christi 1993, writ denied). Under this standard, Wyndham's factual sufficiency challenge also fails.

Each of the Wyndham guests who testified said that Palmer appeared to be a Wyndham agent with authority to organize water sports activities. Wyndham alleged that it warned guests about freelance tour operators, but this was wholly unsupported by the testimony of Self, her daughter, and both disinterested witnesses. While dressed in a manner nearly identical to the Wyndham employees, Palmer approached Wyndham's guests in Wyndham's courtyard to solicit for participants in the glass-bottomed boat tour. Still dressed in this misleading manner, Palmer paraded the tour participants down the hotel's private pier and through the hotel's courtyard and lobby. During this whole time, Palmer was never questioned by any Wyndham employee. In fact, when one of the Wyndham guests subsequently sought to complain to Palmer about the accident, the guest was directed to the Wyndham employee lounge where he found Palmer.

All of these facts are persuasive evidence that provides a sufficient basis from which the jury could conclude that Wyndham's inaction created the ostensible agency. Furthermore, the fact that transportation to the downtown pier was included in the price of the tour implies that Palmer's negligent act fell within the apparent scope of his ostensible authority. Even if the jury had been properly charged on the issue of ostensible agency, these facts would preclude any challenge to the factual sufficiency of the evidence. *Cain,* 709 S.W.2d at 176; *Twenty–Four Thousand One Hundred Eighty Dollars,* 865 S.W.2d at 185. Accordingly, we overrule Wyndham's third point of error.

## IV. ENTRY OF JUDGMENT ON THE VERDICT

Wyndham's first and fifth points of error concern the adequacy of the verdict to support the trial court's judgment. In its first point, Wyndham argues that any adverse findings were immaterial in light of the finding that Wyndham was not negligent in failing to protect Self from Palmer's act of negligent entrustment. Wyndham's fifth point challenges the aspect of the court's judgment that attributes Stubbs's negligence to Wyndham.

### A. Effect of Other Findings

■ Both Self and Wyndham contend that any ambiguity in the jury's findings can be resolved by reference to other findings. Self asserts that the comparative negligence finding, which attributed 50% of the negligence to Wyndham, limits the effect of the finding favorable to Wyndham. Conversely, Wyndham cites cases that suggest comparative findings may be considered immaterial in light of a finding that precludes liability. *See, e.g., Ruiz v. Flexonics,* 517 S.W.2d 853, 856–57 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

Because the comparative fault finding in the instant case incorporated a determination of negligence, however, the rule of law underlying *Ruiz* and similar cases does not apply. *Ruiz,* 517 S.W.2d at 856–57; *cf. Johnson v. Johnson,* 869 S.W.2d 490, 491–92 (Tex.App.—Eastland 1993, no writ) (jury's answer on question purely inquiring about damages is immaterial in light of findings that preclude liability). Moreover, the finding on which Wyndham relies only acquits Wyndham of negligence in failing to prevent Palmer's act of negligent entrustment, which caused Self's injury. Such a specific finding is far too narrow to qualify as a complete absolution on all issues of liability.

■ While we cannot ignore the comparative negligence and agency findings against Wyndham, we are also bound by the jury's finding in favor of Wyndham on the issue of Palmer's negligent entrustment. *See Spencer,* 876 S.W.2d at 157 (discussing limited circumstances under which a jury finding may be disregarded). When faced with the possibility of a fatal inconsistency among the findings of the jury, we must attempt to construe the verdict as a whole in an effort to

reconcile the conflict. *Luna v. Southern Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex. 1987); *Victoria Air Conditioning, Inc. v. Lebco Constructors, Inc.*, 752 S.W.2d 625, 627 (Tex.App.—Corpus Christi 1988, writ denied). This reconciliation process requires examination of the findings in the context of "the facts in the particular case, the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings, when considered as a whole." *Pruitt v. General Ins. Corp.*, 265 S.W.2d 908, 910 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.); *see also Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980).

The pleadings and evidence in this case clearly support the finding that Wyndham negligently created the appearance of agency by failing to take any action to prevent such a misunderstanding. Nevertheless, the pleadings and evidence could simultaneously support the conclusion that Wyndham had no actual relationship with Palmer and, therefore, no control over Palmer's actions. In all likelihood, this latter conclusion led the jury to find that Wyndham was not negligent in failing to protect Self from Palmer's act of negligent entrustment.

These reconcilable findings only come into apparent conflict as a result of the following instruction:

> The conduct of the agents and employees of the Wyndham Hotel Company, acting within the course and scope of their employment, is considered the conduct of the Wyndham Hotel Company.

Because the jury found that Palmer was negligent and there was "an agency relationship" between Palmer and Wyndham, potential conflict lies in the finding that did not attribute Palmer's negligence to Wyndham. Wyndham argues that an implied finding on the issue of "course and scope" best reconciles this conflict. Yet this construction conflicts with the facts of record and the jury's other findings. A more reasonable resolution lies in a close examination of how the parties presented their evidence.

Most of the evidence that Self presented was relevant to the issue of *apparent* agency, but most of Wyndham's defensive evidence concerned the absence of any *actual* relationship. As both parties pleaded this issue and presented their evidence to the jury, the difference between an actual agent and a person who had acquired the appearances of agency was a critical distinction.

The record contains many illustrations of how the two parties characterized the facts and presented their evidence in a manner that affected the submission of the apparent agency issue. During closing argument, for example, Self summarized her evidence to the conclusion that this "case is about apparent agency." In one final reemphasis of Wyndham's radically different perception of the suit, Wyndham interrupted Self's closing argument to object to this statement. Although the court overruled Wyndham's objection, the jury was nevertheless refocussed on Wyndham's contention that an apparent agent is not a real agent.

In light of the significance placed on the distinction between actual agents and apparent agents, the jury may have understandably read the disputed instruction as applying only to actual agents. The instruction refers "agents and employees of the Wyndham Hotel Company, acting within the course and scope of their employment" without mentioning persons who acquired the appearances of agency. In the context of how the facts underlying the issue of apparent agency were presented to the jury, it is reasonable that the jury would not attribute acts of an ostensible agent to the principal. Because this construction avoids conflict among the jury's various findings, this interpretation of the verdict should be adopted. *Bender*, 600 S.W.2d at 260; *Victoria Air Conditioning*, 752 S.W.2d at 627. Consequently, we overrule Wyndham's first point of error.

### B. Apportionment of the Liability for Damages

Wyndham's fifth point of error concerns the jury's allocation of negligence, which attributed 50% of the negligence to Wyndham, 20% each to Palmer and Stubbs, and 10% to Self. Specifically, Wyndham complains that the trial court erred by entering judgment

that Wyndham pay 90% of Self's damages as a result of this verdict.

Wyndham first argues that the finding absolving Wyndham of responsibility for Palmer's negligence rendered the finding that allocated 50% of the negligence to Wyndham immaterial. But, as we concluded above, the finding that attributed 50% of the negligence to Wyndham was not immaterial. Rather, the finding favorable to Wyndham was too narrow to exonerate Wyndham of all the negligence that Self pleaded and supported with sufficient evidence.

Second, Wyndham contends that it is not liable for the 20% of the negligence apportioned to Palmer because of the omission of the scope-of-apparent-agency element from jury question two. As with Wyndham's first point, we discussed this argument above and rejected Wyndham's contention.

Wyndham's third complaint involves the aspect of the judgment that holds Wyndham liable for the 20% of the negligence allocated to Stubbs. Because there was no finding that Stubbs was an agent or employee of the hotel, Wyndham argues, the trial court erred by entering a judgment that holds Wyndham liable for Stubbs's negligence.

 In a negligent entrustment claim where the driver is not a party to the suit, an ideal submission of the issue would not inquire into the comparative negligence of the driver's conduct. *See, e.g.,* 1 State Bar of Texas, Texas Pattern Jury Charges PJC 6.12 (1987); *cf. Bounds v. Scurlock Oil Co.,* 730 S.W.2d 68, 72 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (discussing the submission of a nonparty's comparative negligence). Alternatively, a finding that the owner was guilty of negligent entrustment may justify the submission of a question that divides the negligence between only the plaintiff and the nonparty driver. *Loom Craft Carpet Mills, Inc. v. Gorrell,* 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ) ("If the owner is negligent [under a negligent entrustment theory], his liability for the acts of the driver is established, and the degree of negligence of the owner would be of no consequence [to the determination of the percentage of comparative negligence].") Under this permissible submission of the negligent entrustment issue, "the liability for such wrong" attributed to the driver "is passed on to the owner" as a matter of law. *Id.*

Applied to the case under review, this alternative submission of the issue results in a finding allocating 20% of the negligence to Stubbs so that it is attributable to Palmer as a matter of law. Because Self prevailed on the issue of apparent agency, Wyndham is liable for Palmer's negligence under the doctrine of *respondeat superior.* As a result, we overrule Wyndham's fifth point of error.

## V. PREJUDGMENT INTEREST

Wyndham's sixth and final point of error complains that the trial court erred by awarding prejudgment interest on Self's future damages. Subsequent to the submission of this case to our court, however, the supreme court conclusively resolved this issue in a manner that comports with the trial court's judgment. *See C & H Nationwide, Inc. v. Thompson,* 37 Tex.Sup.Ct.J. 1059, 1066, 1994 WL 278167 (June 22, 1994). Consequently, we overrule Wyndham's final point of error without further discussion. Tex.R.App.P. 90(a).

Having considered and overruled each of Wyndham's six points of error, we affirm the judgment of the trial court.