IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
02-0381
════════════
 
F.F.P. 
Operating Partners, L.P., D/B/A Mr. Cut Rate #602, Petitioner,
 
v.
 
Xavier 
Duenez and Wife Irene Duenez, as Next Friends of Carlos Duenez and Pablo Duenez, 
Minors, Respondents
 
════════════════════════════════════════════════════
On Petition for 
Review from the
Court of 
Appeals for the Thirteenth District of Texas
════════════════════════════════════════════════════
 
 
Argued November 30, 2005
 
 
Chief Justice 
Jefferson, 
dissenting.
 
If a bar sells liquor to a person so 
“obviously intoxicated” that he is “a clear danger to himself and others,” to 
what extent does the sale “proximately cause” the harm that person inflicts when 
he gets behind the wheel? The Legislature has answered that it does not matter. 
If the bar sells to a drunk, it must pay damages when the drunk’s intoxication 
(not the provider’s sale) causes the sort of trauma at the heart of this case. 
The Legislature plainly believes that deterring such a sale is sound public 
policy. By imposing potentially crippling financial penalties on those who 
ignore its dictates, the statute has the salutary effect of enlisting providers 
in the state’s campaign against drunk driving. Under the Court’s construction, 
however, the bar may avoid liability precisely because its patron 
was so “obviously intoxicated” and such a “clear danger” that the sale could not 
have proximately caused carnage on a Texas road. The dram shop thus has a 
perverse incentive to establish at trial that its customer was in such a drunken 
state that selling him “one for the road” could not have contributed to the harm 
his intoxication later caused. I cannot agree that the Legislature intended as a 
defense to liability proof that the dram shop completed a sale that the statute 
quite sensibly forbids. 
The Court relies heavily on our opinion 
in Sewell, but as I demonstrate below, the Court’s reliance on that case 
only perpetuates our prior error in interpreting the Dram Shop Act. See Smith 
v. Sewell, 858 S.W.2d 350, 356 (Tex. 1993). I would hold, contrary to 
Sewell, that the Legislature has imposed a form of vicarious liability on 
a dram shop for the acts of its intoxicated customer. Because the shop’s conduct 
is statutorily irrelevant in relation to the plaintiff’s injury, there is no 
legitimate basis for comparing its responsibility with that of the intoxicated 
person.
I
Vicarious Liability 
and the Dram Shop Act
The question here is whether and, if so, 
how chapter 33’s proportionate responsibility scheme applies to claims based on 
the Dram Shop Act. Our separate writings in this case demonstrate that the 
statutes are not easily harmonized. See also Fid. & Guar. Ins. 
Underwriters Inc. v. Wells Fargo Bank, No. H-04-2833, 2006 U.S. Dist. LEXIS 
23545, at *17 (S.D. Tex. Mar. 31, 2006) (noting that “courts and commentators 
alike have recognized the difficulty in reconciling the language of the 
Proportionate Responsibility Statute with certain causes of actions, including 
vicarious and/or derivative liability actions”). This is not the first time we 
have struggled to reconcile chapter 33 with another statute’s terms. See, 
e.g., Southwest Bank v. Info. Support Concepts, Inc., 149 S.W.3d 104, 111 
(Tex. 2004) (concluding that, even assuming a UCC conversion claim is a tort, 
“the Legislature did not intend to upset the UCC’s carefully balanced liability 
provisions by applying Chapter 33 to a UCC-based conversion claim” and “[t]o 
hold otherwise would ignore the UCC itself and thwart its underlying purpose”). 
Nor have we been the only court to recognize exceptions to the statute’s 
apportionment scheme. See, e.g., Fid. & Guar. Ins. Underwriters, 2006 
U.S. Dist. LEXIS 23545, at *18 (“Although the language of the statute itself 
indicates a clear legislative preference for apportionment of responsibility in 
all tort actions, it is equally clear that an apportionment scheme is not proper 
in certain cases.”); Rosell v. Cent. W. Motor Stages, Inc., 89 S.W.3d 
643, 656-57 (Tex. App.—Dallas 2002, pet. denied). 
The Court and Justice O’Neill would submit both the provider 
and the intoxicated person in the apportionment question, the Court employing it 
to reduce the dram shop’s liability and Justice O’Neill to facilitate the 
shop’s contribution action against the intoxicated tortfeasor. While I concede 
that Sewell supports a comparative submission of the provider and the 
intoxicated person, such a submission is inconsistent both with the provider’s 
essentially vicarious liability and chapter 33’s mandate to apportion liability 
only among those causing the harm at issue. The Court holds that dram shop 
liability cannot be vicarious, reiterating our holding in Sewell that 
such liability is based on the provider’s own conduct. Justice O’Neill writes that liability 
is both direct and vicarious, as it includes the provider’s wrongful sale and 
imputes to the provider the harm caused by the drunk’s intoxication. I disagree 
with those interpretations. To give effect to each statute, we must acknowledge 
that the Dram Shop Act imposes a form of vicarious liability.
Both the Dram Shop Act and chapter 33 
support such an interpretation. While liability under the Dram Shop Act is 
premised on the provider’s sale, the requisite causal link focuses solely on the 
drunk’s actions. Once alcohol is provided to a person so “obviously intoxicated 
to the extent that he presented a clear danger to himself and others,” the 
provider’s role is complete. See Tex. Alco. Bev. Code § 2.02(b)(1). From 
that point forward, any harm caused by the intoxicated person is imputed to the 
provider; indeed, for purposes of the Dram Shop Act, the provider virtually 
becomes the drunk. Hence, the only causation required under the statute focuses 
on the intoxicated person’s, not the dram shop’s, actions. Id. § (b)(2) 
(requiring proof that “the intoxication of the recipient of the alcoholic 
beverage was a proximate cause of the damages suffered”) (emphasis 
added).
F.F.P. concedes that, under the Dram Shop 
Act, the provider’s actions need not be a cause-in-fact of the harm.[1] Earlier versions of the act 
included such an element, but the Legislature deleted it before the statute was 
enacted. Compare Tex. C.S.H.B. 1652, 70th Leg., R.S. (1987) (Dram Shop 
Act claim requires proof that “the provider was the last known contributor to 
the intoxication of the recipient; and that the recipient consumed no alcoholic 
beverage subsequent to that served by the last contributor”) with Tex. Alco. Bev. Code § 2.02(b) 
(containing no such requirement). Instead, unlike other states,[2] the Texas statute imposes 
liability even absent causation relating to the provision of alcohol.[3] If the dram shop’s conduct 
need not be a substantial factor in bringing about the injury, then it cannot be 
said to have caused or contributed to the accident. See Union Pump Co. v. 
Allbritton, 898 S.W.2d 773, 775 (Tex. 1995).
That Texas omitted such a requirement is 
significant. Chapter 33 requires apportionment among claimants, defendants, 
settling persons, and responsible third parties, but not all such persons are 
submitted in the apportionment question. See Tex. Civ. Prac. & Rem. Code § 
33.003. Instead, chapter 33 imposes an important limitation on the allocation of 
responsibility: Only those persons who “caus[ed] or contribut[ed] to cause in 
any way the harm for which recovery of damages is sought” must be included 
in apportioning responsibility for that harm.[4] Id. §§ 33.003, 
33.011(4) (emphasis added); William D. Underwood & Michael D. Morrison, 
Apportioning Responsibility in Cases Involving Claims of Vicarious, 
Derivative, or Statutory Liability for Harm Directly Caused by Another, 55 
Baylor L. Rev. 617, 638 (2003) 
(hereinafter “Apportioning Responsibility”) (“[U]nder section 
33.003, the jury apportions responsibility among only those persons whose 
conduct caused or contributed to cause the plaintiff’s injury.”) 
(footnote omitted) . This restriction is “especially significant” in cases 
involving claims against persons whose liability is vicarious: 
A person whose liability was purely 
vicarious had not personally engaged in “conduct or activity” that had “caused 
or contributed to cause” the harm. Liability was based instead entirely on the 
relationship between the person whose tortious conduct proximately caused the 
harm and the person who was vicariously responsible. Thus, rather than 
allocating responsibility among persons directly liable and persons vicariously 
liable, whatever responsibility existed for persons directly liable was simply 
passed on to persons vicariously liable. The vicariously liable defendant 
essentially stepped into the shoes of the tortfeasor who was directly 
responsible and assumed that person’s responsibility to the claimant.
 
Id. at 628-29 (footnote omitted). Because 
the inquiry involves the harm for which recovery of damages is sought, “it is 
obvious that it concerns only the primary conduct of the active participants in 
the event, accident, or physical episode giving rise to the injuries complained 
of by the claimant, and the causational role of that primary conduct in the 
episode.” Carl David Adams, The “Tort” of Civil Conspiracy in Texas, 54 
Baylor L. Rev. 305, 315 (2002); 
Gregory J. Lensing, Proportionate Responsibility and Contribution Before and 
After the Tort Reform of 2003, 35 Tex. Tech L. Rev. 1125, 1184-86 (2004) 
(noting that “[i]t is problematic to assign the jury the task of apportioning 
responsibility between the intoxicated person and the dram shop when the dram 
shop’s statutory liability is not necessarily based on true responsibility for 
the accident, in the sense of causing the accident, at all”). 
Courts applying chapter 33’s 
apportionment scheme in negligent entrustment cases—a variant of vicarious 
liability—have used similar reasoning to conclude that an entrustor should not 
be included in the apportionment question. In Rosell v. Central West Motor 
Stages, Inc., the Rosells, plaintiffs in a wrongful death and survival 
action, contended that the trial court erred by refusing to submit Central West, 
employer of the allegedly negligent bus-driver and owner of the vehicle that 
struck and killed their son, in the jury’s apportionment question. The court of 
appeals disagreed:
The Rosells contend that Central West 
should be included because it was a producing or contributing cause of the 
injuries to Chad. Although negligent entrustment and negligent hiring are 
considered independent acts of negligence, these causes are not actionable 
unless a third party commits a tort. In that respect, these causes are similar 
to the respondeat superior theory of recovery where, unless the employee commits 
a tort in the scope of employment, the employer has no responsibility. In 
reviewing the application of section 33.003 to responsibility, we observe that, 
while the statute on its face requires all defendants to be included in the 
apportionment question, it would not be proper for an employer to be included 
along with the driver if its only responsibility was that of respondeat 
superior. Section 33.003 has not been used to require both a driver and employer 
to be submitted in the apportionment question in that situation.
 
Similarly, the causes of action for 
negligent entrustment and hiring are a means to make a defendant liable for the 
negligence of another. Once negligent hiring or entrustment is established, the 
owner/employer is liable for the acts of the driver, and the degree of 
negligence of the owner/employer is of no consequence. Thus, because Rieve’s 
negligence would be passed on, it was proper to apportion fault among those 
directly involved in the accident. 
Rosell, 89 S.W.3d at 656-57 (citations and 
footnote omitted).
Even before chapter 33’s 1995 amendments, 
courts engaged in similar analysis to conclude that the entrustor should not be 
included in an apportionment question. In Loom Craft Carpet Mills, Inc. v. 
Gorrell, the court of appeals noted that:
 
Negligent entrustment liability is 
derivative in nature. While entrusting is a separate act of negligence, and in 
that sense not imputed, it is still derivative in that one may be extremely 
negligent in entrusting and yet have no liability until the driver causes an 
injury. If the owner is negligent, his liability for the acts of the driver is 
established, and the degree of negligence of the owner would be of no 
consequence. When the driver’s wrong is established, then by negligent 
entrustment, liability for such wrong is passed on to the owner. We believe the 
better rule is to apportion fault only among those directly involved in the 
accident, and to hold the entrustor liable for the percentage of fault 
apportioned to the driver.
Loom Craft, 823 S.W.2d 431, 432 & n.7 (Tex. 
App.—Texarkana 1992, no pet.) (declining to follow cases from other 
jurisdictions in which fault was apportioned to the entrustor); see also 
Wyndham Hotel Co. v. Self, 893 S.W.2d 630, 640 (Tex. App.—Corpus Christi 
1994, writ denied); Rodgers v. McFarland, 402 S.W.2d 208, 210 
(Tex. App.—El Paso 1966, writ ref’d n.r.e.) (noting that, in a negligent 
entrustment case, “[t]he proximate cause of the accident or the occurrence is 
the negligence of the driver and not that of the owner”).
More recently, the Fort Worth Court of 
Appeals grappled with the proper submission of a negligent entrustment claim. 
Bedford v. Moore, 166 S.W.3d 454 (Tex. App.—Fort Worth 2005, no 
pet.). Based in part on this Court’s now-withdrawn opinion in this case, the 
court concluded that the entrustor should be submitted in the apportionment 
question. The court then held, however, that failure to submit the entrustor was 
not reversible error: 
There were only two people involved in 
the accident. Therefore, the submission of the acts of “other parties” whose 
actions preceded the actions of [the driver] at the time of the accident could 
only have contributed to her actions at the accident scene, that is, to her 
forty percent negligence. In other words, because there were only two parties 
involved in the incident, the jury has decided how those actions at the time of 
the accident should be apportioned as far as responsibility is concerned. What 
led up to those actions at the time of the accident does not change those 
actions at the accident scene but can only be subparts of those respective 
responsibilities. [The entrustors] did not cause [the plaintiff] to cross the 
highway or [the driver] to strike that truck. Therefore . . . we conclude that 
it was harmless error to omit them from those questions.
 
Bedford, 166 S.W.3d at 464.[5] This passage captures the 
proper submission in a vicarious liability case: If, in fact, the entrustor’s 
share of responsibility is merely a “subpart” of the entrustee’s share, then the 
entrustor should not be submitted separately. Only the entrustee should be 
submitted, and his or her negligence would then be imputed to the entrustor as a 
matter of law.
Under similar reasoning, even after 
chapter 33’s 1995 amendments, the provider should not be included in the 
apportionment question. The Dram Shop Act is “intended to deter providers of 
alcoholic beverages from serving alcoholic beverages to obviously intoxicated 
individuals who may potentially inflict serious injury on themselves and on 
innocent members of the general public.” Sewell, 858 S.W.2d at 356. The 
Court’s holding runs counter to that policy. As commentators 
recognize:
If a person whose conduct creates a 
foreseeable risk of misconduct by another (in other words, a person whose 
liability is derivative) can largely escape responsibility simply because the 
very event which made his own conduct wrongful in the first place actually 
occurs, then the incentive to take precautions against the risk is substantially 
reduced. This concern is especially great when the foreseeable event is a crime 
of violence given the likelihood that a jury, when asked to apportion 
responsibility between a person who commits a crime of violence and a person 
whose conduct simply involved facilitating that crime through negligence, might 
be expected to apportion most of the responsibility to the person who actually 
committed the crime. Allocating responsibility in cases of vicarious or 
derivative liability would not only be bad policy, but has not traditionally 
been how Texas courts have interpreted and applied the allocation of 
responsibility provisions in Chapter 33. Moreover, nothing in the language or 
the legislative history of the 1995 tort reform revisions to the allocation of 
responsibility provisions of Chapter 33 either requires or justifies departure 
from the traditional rule that juries are not asked to allocate responsibility 
between persons who are directly liable and persons whose liability is either 
derivative or vicarious. 
 
Apportioning 
Responsibility, 55 Baylor L. Rev. at 624-25 (footnotes 
omitted). Thus, “given that causation is imputed to the provider in an action 
under the [Dram Shop] Act, section 33.003 neither contemplates or permits the 
apportionment of responsibility between the intoxicated patron and the provider 
in an action brought by an injured third party.” Id. at 642. This 
approach is supported by the Restatement, which provides that “[a] person whose 
liability is imputed based on the tortious acts of another is liable for the 
entire share of comparative responsibility assigned to the other, regardless of 
whether joint and several liability or several liability is the governing rule 
for independent tortfeasors who cause an indivisible injury.” Restatement (Third) of Torts: Apportionment of 
Liability § 13 (2000).
The Court concludes that it is improper 
to analogize dram shop claims to other vicarious liability situations, because 
those situations typically rely on a right of control or an employer/employee 
relationship, which may be absent in a dram shop situation. In this case, 
however, the Legislature chose to impose vicarious liability for Dram Shop Act 
claims and consciously opted to omit control as a prerequisite. That the 
justification for doing so may not comport with the rationale for common-law 
vicarious liability is beside the point.
The Court reasons that, because the Dram 
Shop Act was not among the explicit exceptions to proportionate liability set 
forth in chapter 33, it must be included. This is not necessarily so. As we 
recognized in Southwest Bank, if another statute enacts a comparative 
responsibility scheme, chapter 33 will not govern a claim brought under the 
other statute, notwithstanding that the other statute is not among chapter 33’s 
enumerated exceptions. See Southwest Bank, 149 S.W.3d at 111. Nor did the 
Legislature exclude negligent entrustment or respondeat superior claims from the 
reach of chapter 33. Applying the Court’s logic, by omitting those actions the 
Legislature intended that employers or entrustors be submitted in an 
apportionment question even though their liability is purely vicarious. More 
likely, the Legislature never envisioned that a court would include in the 
apportionment question persons whose only liability was vicarious.
The Court’s decision to include the 
provider in the apportionment question would first necessitate an inquiry 
otherwise unnecessary under the Dram Shop Act: whether the provider’s conduct 
caused or contributed to cause the plaintiff’s injuries. Apportioning 
Responsibility, 55 Baylor L. 
Rev. at 638. 
If the jury’s answer was no, then under 
the express language of section 33.003, the jury could not consider the provider 
in apportioning responsibility. Since no responsibility could be apportioned to 
the provider, one possible result would be that the provider would not be liable 
for any of the plaintiff’s damages. This result would have the effect of 
rewriting the Dram Shop Act to read into the Act a causation requirement that 
simply is not there. The provider would always escape all responsibility 
unless the jury found a causal connection between the provider’s conduct and the 
plaintiff’s injury. That result obviously would be wrong. 
 
Id. (footnote omitted) (emphasis added). The 
Legislature meant to make providers liable whether or not their conduct 
played a causative role in subsequent harm. The Court’s holding eviscerates that 
policy choice and requires that the Duenezes prove not only that Ruiz consumed 
F.F.P.’s alcohol, but also that his consumption so aggravated the danger he 
posed pre-sale that the sale (and not just his prior intoxicated condition) 
“caused” the ultimate harm. But the statute does not require that the patron 
consume the alcohol, that the sale aggravate the patron’s prior intoxication, or 
that the provider play any role in causing or contributing to the accident. 
Ironically, under the Court’s interpretation, the provider now has an incentive 
to establish that its patron was so drunk at the time of sale that its conduct 
could not, as a matter of law, have contributed to the harm the patron 
ultimately caused. As a result, the very instrument that the Legislature 
employed to deter drunk driving (liability for serving a drunk) becomes a means 
to escape responsibility entirely. 
Joining the intoxicated person as a 
responsible third party does not change this result. See Tex. Civ. Prac. & Rem. Code § 
33.011. As commentators have noted: 
By adding the [responsible third party 
language] to section 33.003, the Texas legislature clearly intended to change 
existing law regarding the apportionment of responsibility among tortfeasors 
with direct liability. But there is absolutely no indication in either the 
legislative history or the text of the amended apportionment of responsibility 
provisions of Chapter 33 that the legislature intended to now permit 
apportionment of responsibility among directly liable tortfeasors and those 
whose liability was only derivative or vicarious. 
Apportioning 
Responsibility, 55 Baylor L. Rev. at 631. Whatever 
percentage of responsibility is attributed to the drunk should be imputed to the 
provider, who may then seek indemnity from the intoxicated person. Cf. 
Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 819-20 (Tex. 
1984).
II
Sewell and Third-Party Actions 
 
If I were writing on a clean slate, my 
analysis could end here. But in Smith v. Sewell, we determined that 
“[chapter 33] is applicable to Chapter 2 causes of action” and held that “an 
intoxicated person suing a provider of alcoholic beverages for his own injuries 
under Chapter 2 will be entitled to recover damages only if his percentage of 
responsibility is found to be less than or equal to 50 percent.” Sewell, 
858 S.W.2d at 356. Although our holding was not limited to first-party claims 
(i.e. a drunk suing a dram shop), our reasoning arguably supports such a 
limitation:
Chapter 2 is intended to deter providers 
of alcoholic beverages from serving alcoholic beverages to obviously intoxicated 
individuals who may potentially inflict serious injury on themselves and on 
innocent members of the general public. But when it is the intoxicated 
individual who is injured due to his own intoxication, it is particularly 
appropriate that his conduct in contributing to his injury should be considered 
in assessing the amount of recovery, if any, to which he is entitled. 
Application of the principles of comparative responsibility to causes of action 
brought under Chapter 2 establishes a consistent and equitable approach to the 
issue of “dramshop liability” generally, and first party “dramshop liability” 
specifically. This approach provides an effective solution to a difficult and 
controversial issue. 
 
Id. 
Even if limited to first-party claims, 
however, Sewell presents another, more difficult, problem. In 
Sewell, we held—incorrectly, in my opinion—that a provider should be 
included in the apportionment question because its conduct violated an 
applicable legal standard. Sewell, 858 S.W.2d at 356 (quoting “percentage 
of responsibility” definition and holding that “[b]ecause Chapter 2 clearly 
establishes a legal standard and creates a cause of action for conduct violative 
of that legal standard, the definition of ‘percentage of responsibility’ 
provides additional support for our determination that the Comparative 
Responsibility Act is applicable to Chapter 2 causes of action”). Implicitly, 
therefore, we held that the provider in a dram shop case must have “caused or 
contributed to cause” the harm for which recovery of damages was sought. For the 
reasons set forth above, that simply need not be the case. While Sewell 
remains workable for first-party claims, as apportionment between the drunk and 
the provider approximates what would occur in an indemnity action,[6] Sewell’s reasoning 
breaks down when applied to third-party dram shop actions. Submitting both the 
drunk and the provider as parties who “caused or contributed to cause” the harm, 
rather than imputing the drunk’s actions to the provider, would allow the 
provider to lessen or escape liability altogether. 
Thus, for example, a jury could determine 
that a provider’s “percentage of responsibility” is zero—a not unlikely scenario 
given that the provider’s actions are compared with a person so obviously 
intoxicated he posed a danger to himself and others—notwithstanding that the 
drunk’s intoxication proximately caused the harm. This contravenes the purpose 
as well as the text of the Dram Shop Act, which imposes liability even absent 
causation relating to the provision of alcohol, and is unnecessary to a proper 
application of chapter 33. See Tex. Alco. Bev. Code § 1.03 (requiring 
that the Dram Shop Act be liberally construed to accomplish its purpose of 
protecting the welfare, health, and safety of the people). “To paraphrase Dean 
Prosser, it simply cannot be the law that a defendant can be relieved of the 
consequences of his wrongful conduct by the occurrence of the very risk which 
made his conduct negligent in the first instance.” Apportioning 
Responsibility, 55 Baylor L. 
Rev. at 650. 
In Sewell, we were faced with a 
person suing a dram shop for damages he suffered in a one-car accident due to 
his own intoxication. Although Sewell correctly held that chapter 33 
applies to first-party Dram Shop Act claims, its holding regarding the 
submission of the provider in the apportionment question cannot apply to 
third-party claims, and its reasoning for that submission does not comport with 
the statute’s terms. Thus, I would limit Sewell to first-party claims and 
overrule its holding that the provider is properly included within those persons 
who caused the harm. 
III
Conclusion
 
The Legislature, confronting a serious 
question of public health, enacted a strong deterrent to curb the plague of 
drunk driving in Texas. If a provider sells to a drunk, it must answer in 
damages for the injury its patron’s intoxication visits upon an innocent person, 
even if the sale is not itself the proximate cause. The policy reflects a 
concern not only for the victim. It is a comprehensive approach designed to 
discourage the sale of liquor to a person whose intoxication poses an obvious 
danger to the public. Faced with the specter of catastrophic financial loss, a 
provider is more likely to intervene (for selfish interests, and to the public 
good) by closely monitoring a customer’s alcohol intake, by refusing to serve 
more liquor to an obviously drunk person and, where appropriate, by offering to 
arrange alternative transportation or by alerting law enforcement. At a minimum, 
the provider has a direct incentive to enroll its employees in training that 
emphasizes how to recognize the debilitating effects of excessive alcohol 
consumption and offers methods to avoid its devastating consequences. See 
Tex. Alco. Bev. Code § 106.14(a). 
Considerations like these justify the Legislature’s intentional omission of a 
proximate cause element with respect to the provider’s sale. The Court’s 
insertion of that defense, contrary to the statute’s terms, seriously undermines 
an important deterrent. 
In an appeal to cozening hope, the Court 
offers that a jury will not always assign most of the responsibility to a 
provider’s patron. ___ S.W.3d at ___. The Duenezes will take cold comfort in 
that pronouncement. The record shows that Ruiz—already so intoxicated that he 
was a clear danger to others before F.F.P. completed the sale—drank, at most, 
one more beer in 1.5 miles of highway driving afterwards. Under the legal 
sufficiency standards announced in City of Keller v. Wilson, 168 S.W.3d 
802 (Tex. 2005), that evidence will never support a finding that F.F.P. caused 
the accident. The Court’s remand for a new trial is, in reality, a decree of 
rendition.
I would affirm the court of appeals’ 
judgment.[7] See Tex. R. App. P. 60.2(a).
 
______________________
Wallace B. Jefferson
Chief Justice 
 
 
OPINION DELIVERED:     May 11, 
2007  




[1] F.F.P.’s reply brief asserts, 
correctly, that “[u]nder [the statutory] elements, the dram shop plaintiffs need 
not prove that ‘but for’ the alcohol seller’s conduct, the harm would not have 
occurred—presumably because it will always be hard to prove that any injury 
occurred because of any particular sale of alcoholic beverage.” 


[2] Some states require that the dram 
shop’s provision of alcohol cause the harm. See, e.g., Ark. Code § 16-126-104 (2006) 
(requiring jury in dram shop case to determine “whether or not the sale 
constitutes a proximate cause of any subsequent injury to other persons”) 
(emphasis added); Ga. Code § 
51-1-40 (2000) (“[A] person who . . . knowingly sells, furnishes, or serves 
alcoholic beverages to a person who is in a state of noticeable intoxication, 
knowing that such person will soon be driving a motor vehicle, may become liable 
for injury or damage caused by or resulting from the intoxication of such minor 
or person when the sale, furnishing, or serving is the proximate cause of 
such injury or damage.”) (emphasis added); Mich. Comp. Laws § 436.1801 (2001) ( 
“[A]n individual who suffers damage or who is personally injured by a minor or 
visibly intoxicated person by reason of the unlawful selling, giving, or 
furnishing of alcoholic liquor to the minor or visibly intoxicated person, if 
the unlawful sale is proven to be a proximate cause of the damage, injury, or 
death, or the spouse, child, parent, or guardian of that individual, shall 
have a right of action in his or her name against the person who by selling, 
giving, or furnishing the alcoholic liquor has caused or contributed to the 
intoxication of the person or who has caused or contributed to the damage, 
injury, or death”) (emphasis added); Tenn. Code § 57-10-102 (2002)(imposing 
liability if a jury finds, “beyond a reasonable doubt that the sale by 
such person of the alcoholic beverage or beer was the proximate cause of the 
personal injury or death sustained and that such person . . . [s]old the 
alcoholic beverage or beer to an obviously intoxicated person and such person 
caused the personal injury or death as the direct result of the consumption 
of the alcoholic beverage or beer so sold”) (emphasis added). 


[3]  This may seem punitive, as it 
risks imposing liability without fault, but the Legislature also provides a 
relatively cost-free safe harbor: the trained server defense. As the Court’s 
original opinion noted, section 106.14(a) provides that “the actions of an 
employee shall not be attributable to the employer if” the provider establishes 
that it required the employee to attend a training course approved by the Texas 
Alcoholic Beverage Commission, the employee actually attended the course, and 
the provider did not encourage the employee to violate the Alcoholic Beverage 
Code. Act of May 21, 1987, 70th Leg., R.S., ch. 582, § 3, 1987 Tex. Gen. Laws 
2298, 2299 (amended 2003) (current version at Tex. Alco. Bev. Code § 106.14(a)). 


[4] This is consistent with Borneman 
v. Steak & Ale of Texas, Inc., 22 S.W.3d 411, 412-13 (Tex. 2000), a dram 
shop case in which we held that it was error to submit a jury question asking 
whether the conduct of an alcohol provider was a proximate cause of the 
occurrence in question. After the Court issued its November 3, 2006 opinion, the 
Duenezes moved for rehearing, asserting that the Court’s latest interpretation 
of the statute directly conflicts with Borneman. A comparative 
submission, which the Court now requires in this case, presupposes that the 
provider’s conduct is in issue. In this respect, the Court’s current holding 
certainly undermines, if not overrules, Borneman.

[5] On the failure-to-submit issue, 
Chief Justice Cayce concurred in the result only, as he felt that the 
sixty-percent responsibility the jury placed on the plaintiff barred her 
recovery as a matter of law, rendering harmless any error in failing to submit 
the employer’s negligence. Bedford, 166 S.W.3d at 456 (Cayce, C.J., 
concurring).

[6] See B & B Auto Supply, Sand 
Pit, & Trucking Co. v. Cent. Freight Lines, Inc., 603 S.W.2d 814, 817 
(Tex. 1980) (recognizing common law right to indemnity when a party’s liability 
is vicarious).

[7] F.F.P. also contends the trial 
court erred in refusing to instruct the jury on sole proximate cause. F.F.P. 
bases its claimed entitlement to that instruction on evidence that Ruiz was 
reaching under the seat for a compact disc when the accident occurred, and it 
was this inattention, rather than Ruiz’s intoxication, that caused the accident. 
The court of appeals held that Ruiz’s carelessness was indistinguishable from 
his intoxication and, therefore, the trial court did not abuse its discretion in 
refusing to give the requested instruction. 69 S.W.3d at 809. In this Court’s 
original opinion, the Court concluded that, as “[t]he instruction . . . ask[ed] 
the jury to compare the actions of two different people rather than distinguish 
between the same person’s intoxication and inattention[,] [t]he requested 
instruction would not have focused the jury’s attention on the act that F.F.P. 
contends was the sole proximate cause of the Duenezes’ injuries; thus, the trial 
court did not err in refusing to submit it.” I agree with both the court of 
appeals and the Court’s original opinion on this point.