**SOUTHWEST BANK, Petitioner,**

v.

**INFORMATION SUPPORT CONCEPTS, INC.,**
Respondent.

No. 02–0946.

Supreme Court of Texas.

Argued Nov. 5, 2003.

Decided Oct. 22, 2004.

Karen Neeley, Austin, Amicus Curiae Independent Bankers Association.

Donald H. Ray and A. Bruce Wilson, Ray & Wilson, Fort Worth, for Petitioner.

Mark A. Haney, Jeffrey H. Kobs, Kobs & Haney, P.C., and James Lanter, Lanter Westermann, P.C., Fort Worth, for Respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

In this case, we must determine whether Chapter 33 of the Texas Civil Practice and Remedies Code applies to a conversion action brought under Texas Business and Commerce Code section 3.420. The trial court granted Information Support Concept's summary judgment motion, which asserted that Southwest Bank was liable for conversion and could not join a responsible third party to the action, and the court of appeals affirmed. Because we agree that Chapter 33 does not govern a UCC-based conversion claim, we affirm the court of appeals' judgment.

I

**Background**

An Information Support Concepts ("ISC") employee, Kelly Rasco, stole multiple checks, payable to ISC, over an eighteen-month period. She then deposited the checks-approximately 183 of them, totaling more than $300,000—into her personal account at Southwest Bank. Although ISC did not have an account with Southwest

Bank, and the checks did not bear an ISC endorsement or signature,[1] Southwest Bank nevertheless accepted the deposits for Rasco's personal account and secured payment on those checks.

Pursuant to Texas Business and Commerce Code section 3.420, ISC brought a conversion action against Southwest Bank. Southwest Bank answered and sought leave to join Rasco, her husband, and ISC's chief financial officer as responsible third parties pursuant to Texas Civil Practice and Remedies Code Chapter 33. The trial court denied Southwest Bank's motion on the ground that the bank was not entitled to apportion responsibility. ISC then moved for summary judgment on liability for conversion and actual damages. The trial court granted ISC's motion and entered a final judgment against Southwest Bank for actual damages ($328,252) plus prejudgment interest ($38,291.20).[2]

Southwest Bank appealed, complaining that the trial court erred by refusing to allow joinder of Rasco as a responsible third party. 85 S.W.3d 462, 464. While Southwest Bank did not deny that it converted the checks stolen by Rasco, it contended that Rasco shared responsibility for the conversion and should be held proportionately liable. *Id.* at 466. The court of appeals rejected Southwest Bank's arguments and affirmed the trial court's judgment. *Id.* at 463. The court of appeals noted that under the Uniform Commercial Code ("UCC"), it was the depositary bank's obligation to verify an endorsement. *Id.* at 465. The court held that when two statutes conflict, courts must give effect to the specific (here, the UCC) over the general (Chapter 33). *Id.* at 467 (citing Tex.

Gov't Code § 311.026). Additionally, the court noted that recent UCC amendments demonstrated a discrete legislative fault scheme uniquely applicable to banks. *Id.* Thus, the court of appeals concluded "that the proportionate responsibility statute set forth in chapter 33 of the civil practice and remedies code does not apply to a UCC section 3.420 claim for conversion." *Id.* at 468.

Southwest Bank presents a single issue for our review: whether a bank, facing a conversion claim resulting from the theft of an employer's checks by an employee who deposited those checks in the bank, is entitled to join the thief as a responsible third party in the conversion action.

## II

### A

#### UCC Revised Article 3

In an effort to accommodate modern technologies and practices in payment systems and with respect to negotiable instruments, the American Law Institute ("ALI") and the National Conference of Commissioners on Uniform State Laws (the "Commissioners") drafted a revised version of UCC Article 3 ("Revised Article 3"), with corresponding amendments to Articles 1 and 4. *See* Uniform Commercial Code, 2004 Official Text and Comments, prefatory note to Revised Article 3. In 1990, the ALI and the Commissioners approved the new text of Revised Article 3 with miscellaneous and conforming amendments to Articles 1 and 4. 4 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3–101:1 (1999).

---

**1.** Rasco apparently convinced Southwest Bank she was ISC's president and wrote "Deposit Only" on (but did not sign) the back of the checks.

**2.** The trial court also granted Southwest Bank's motion for partial summary judgment on exemplary damages, about which ISC complains in a conditional cross-petition for review.

The American Bar Association approved the Official Text in 1991. Daryl B. Robertson, *Report of the Commercial Code Committee of the Section of Business Law of the State Bar of Texas on Revised UCC Articles 3 and 4*, 47 Baylor L.Rev. 425, 429 (1995).

The Business Law Section of the State Bar of Texas formed a Commercial Code Committee in 1988 for the purpose of studying and making recommendations with respect to new and revised Articles to the UCC. *Id.* at 428. Over the course of several years and numerous meetings, that committee analyzed Revised Articles 3 and 4, with the goal of making a recommendation to the Legislature in conjunction with the 1995 Texas legislative session. *Id.* at 430. The committee recommendation included a complete deletion of existing Chapter[3] 3 and adoption of a new revised Chapter 3; revisions of selected sections in Chapter 4; and conforming amendments to Chapters 1 and 9 of the Business and Commerce Code. *Id.* at 433. Representative Grusendorf introduced as House Bill 1728 the committee's recommended revisions to Chapters 3 and 4. Tex. H.B. 1728, 74th Leg., R.S. (1995), 1995 Tex. Gen. Laws 4582. The bill, with some amendments, was passed by the House and Senate, signed by the Governor, and became effective January 1, 1996. Act of May 29, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582.

Revised Article 3 included UCC section 3–420, adopted verbatim by the Texas Legislature. *See* Tex. Bus. & Com.Code § 3.420. That section, entitled "Conversion of Instrument," provides that "[a]n instrument is ... converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." *Id.* § 3.420(a). Section 3.420 limits a plaintiff's recovery to the amount of the plaintiff's interest in the instrument. *Id.* § 3.420(b). Section 3.420, like its predecessor section 3.419, reflects the rationale that the first bank in the collection chain is usually in the best position to ensure that endorsements are authentic. *See Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex.1984).

## B

### Responsible Third Parties

In the same legislative session that it adopted Revised Article 3, the Legislature amended the Civil Practice and Remedies Code, permitting joinder of responsible third parties[4] in certain cases and providing for the inclusion of a responsible third party in the jury's determination of percentages of responsibility. *See* Tex. Civ. Prac. & Rem.Code §§ 33.003, 33.004, 33.011.[5] By its terms, Chapter 33 applies

---

**3.** The Texas version of the UCC, codified in the Business and Commerce Code, uses the term "Chapter" instead of "Article."

**4.** At all times pertinent to this proceeding, the statute defined "responsible third party" as any person to whom all of the following applied:

(i) the court in which the action was filed could exercise jurisdiction over the person;

(ii) the person could have been, but was not, sued by the claimant; and

(iii) the person is or may be liable to the plaintiff for all or part of the damages claimed against the named defendant or defendants.

Tex. Civ. Prac. & Rem.Code § 33.011(6)(A). The Legislature has since amended this definition, but that amendment does not govern this case. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 4.05, 4.10(3), 2003 Tex. Gen. Laws 847, 857, 859 (current version at Tex. Civ. Prac. & Rem.Code § 33.011(6)).

**5.** Although these provisions have since been amended, in this opinion, we refer to the version of the statute that governs these pro-

to "any cause of action based on tort[6] in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought," but does not apply to actions to collect workers' compensation benefits or certain claims for exemplary damages.[7] *Id.* § 33.002(a), (c). Chapter 33 does not explicitly address its applicability in UCC cases.

## III

## Statutory Analysis

We must decide then whether, in a UCC-based conversion action, a defendant may join a responsible third party as set forth in the Civil Practice and Remedies Code. The UCC contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships. For example, a bank that mistakenly pays a thief who presents a stolen check may sue that thief for breach of the transfer warranty. *See* Tex. Bus. & Com. Code § 3.416; *see also* 6 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3–416:2 (1999) (noting that "a thief gives the transferor's warranties when he transfers the instrument even though he has no right to possess the instrument"). Moreover, Revised Article 3 now includes its own comparative negligence provisions that apply to some, but not all, conversion claims. *See, e.g.,* Tex. Bus. & Com.Code §§ 3.405, 3.406, 4.406; *see also id.* § 3.406 cmt. 4 ("Subsection (b) differs from former Section 3–406 in that it adopts a concept of comparative negligence."). If a thief steals a check made payable to his or her employer and forges an indorsement, the employer's negligence, if any, may bar its claim against the payor bank. *See, e.g.,* 6 Hawkland and Lawrence, Uniform Commercial Code Series § 3–420:6 ("When a payee (or indorsee) whose indorsement has been forged sues the payor for conversion, the payor may defend the action by proving that the payee's negligence substantially contributed to the making of the forged indorsement. Upon such proof, the payee is precluded under Section 3–406 from asserting the forgery. When the payee brings an action for conversion against a depositary bank, the payee's negligence is also available as a defense. In both of these cases, the failure of the payor or depositary bank to exercise ordinary care in paying or taking the instrument will result in allocating of the loss between the bank and the payee to the extent to which each party's failure contributed to the loss.").

Thus, for example, under section 3.405, an employer who entrusts an employee with "responsibility"[8] with respect to an

---

ceedings. We treat other code provisions that have been amended similarly.

6. The parties dispute whether a UCC conversion claim is a "tort" as described in section 33.002(a), but we will assume for purposes of this case that it is. See Tex. Civ. Prac. & Rem.Code § 33.002(a).

7. As with the definition of "responsible third party," the Legislature has amended Chapter 33's applicability provisions. Claims arising under the Deceptive Trade Practice–Consumer Protection Act are now included, see Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.01, 2003 Tex. Gen. Laws 847, 855 (current version at Tex. Civ. Prac. & Rem.Code § 33.002(a)(2)), and claims for damages arising from the manufacture of methamphetamine are now excluded, see Act of May 22, 2001, 77th Leg., R.S., ch. 643, § 2, 2001 Tex. Gen. Laws 1208, 1208–09 (current version at Tex. Civ. Prac. & Rem.Code § 33.002(c)(3)). The amendments, however, do not apply to this case.

8. "Responsibility" is defined as:

authority (i) to sign or indorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an

instrument may be barred from recovery against the bank. Tex. Bus. & Com.Code § 3.405. This section is "based on the belief that the employer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged *indorsements on instruments payable to* the employer or fraud in the issuance of instruments in the name of the employer." *Id.* cmt. 1.

These provisions evince a shift away from strict liability for banks that convert checks to a fault-based system.[9] As White and Summers have noted:

> Subsection 3-406(b) is an invitation for a plaintiff to roll the dice with the jury. . . .
>
> . . . .
>
> The arguments about what constitutes negligent behavior and what does not will likely be little changed by [Revised Article 3]. What has changed are the consequences of proving that the bank was negligent. Under the old Code, proof that the bank was negligent generally meant that the entire loss fell on the bank, not the depositor, regardless of the depositor's negligence. Now, the depositor will seldom be able to cast the entire loss on the bank; the loss will be shared.

James J. White & Robert S. Summers, Uniform Commercial Code § 19-3 (4th ed.1995). The loss allocation provisions essentially "make an initial identification of the party upon whom loss generally should be imposed, based upon the particular type of factual circumstances, but then allow that party to shift at least part of that loss to other parties who contributed to that loss by their failure to exercise ordinary care." Donald J. Rapson, *Loss Allocation in Forgery and Fraud Cases: Significant Changes Under Revised Articles 3 and 4,* 42 Ala. L.Rev. 435, 473 (1991).

Applying Chapter 33's proportionate responsibility framework to claims involving Revised Article 3, therefore, could disrupt the UCC's carefully allocated liability scheme. Amici[10] urge that, in those situations in which the UCC's comparative negligence provisions do not apply, Chapter 33 should. That is, they assert that Revised Article 3 provides its own comparative negligence scheme in the case of forged endorsements but is silent on missing endorsements, such as the one in this case. Accordingly, amici contend that chapter 33 is uniquely applicable to missing endorsement cases. If that were the case, however, the thief's liability would be submitted to the jury in a missing endorsement case but not in a forged endorsement case. Certainly, a bank should bear more culpability in the former situation than the latter, but under the result proposed by ami-

---

account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity.
Tex. Bus. & Com.Code § 3.405(a)(3).

**9.** The court of appeals correctly noted this change: "Although, traditionally, contributo-

ry negligence by a plaintiff was not a defense to a bank's liability for conversion under section 3.420, recently, articles 3 and 4 of the UCC have been amended to permit some defenses by banks when an employer's negligence substantially contributes to the alteration of an instrument or to the making of a forged signature on an instrument." 85 S.W.3d at 467.

**10.** The Independent Bankers Association of Texas and the Texas Bankers Association submitted an amicus brief in support of the petition for review.

ci, the opposite would be true. A bank that paid a check bearing absolutely no endorsement could escape liability if the jury determined the thief was at fault, while a bank that paid on a forged but seemingly genuine endorsement would not be able to submit the thief's liability to the jury. A more reasonable construction is that the Texas Legislature and the UCC drafters considered and rejected comparative fault in missing endorsement cases, but elected to permit it in forged endorsement ones. *See* Tex. Gov't Code § 311.021(3) ("In enacting a statute, it is presumed that ... a just and reasonable result is intended...."). We should not disturb that decision by applying Chapter 33 to those UCC-based conversion claims for which the drafters and the Legislature chose *not* to apportion responsibility. This accords with our mandate to construe the UCC as "carefully integrated and intended as a uniform codification of permanent character covering an entire 'field' of law." Tex. Bus. & Com.Code § 1.104 cmt. 1.

Although there are no Texas cases directly addressing whether Chapter 33 governs a UCC-based conversion claim, the Sixth Circuit Court of Appeals recently considered whether to apply Michigan's Tort Reform Act, Michigan Compiled Laws section 600.2957(1), to such a claim. *See John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 346 F.3d 727, 731 (6th Cir. 2003). In that case, John Hancock Financial Services sued Old Kent Bank to recover check proceeds converted by Old Kent and paid to one of John Hancock's agents, Patrick Sherman. *Id.* at 729. The court examined UCC section 3–406's comparative fault scheme and noted that it involved allocating the loss between two negligent—but innocent—parties. That is, the UCC comparative fault principles did not involve allocating liability to the thief. The court concluded that "[t]he fact that UCC § 3–406 does not allocate fault to the

wrongdoer—as opposed to the negligent parties—is significant in determining whether Michigan's Tort Reform Act applies in this case." 346 F.3d at 732. The court noted that the Michigan Tort Reform Act required the trier of fact to assess "the fault of each person, regardless of whether the person is, or could have been, named as a party to the action." *Id.* (quoting Mich. Comp. Laws § 600.2957(1)). The court concluded that the tension between the two statutes "must be resolved in favor of *not* applying Michigan's Tort Reform Act to UCC conversion actions. Because the UCC more specifically relates to the allocation of fault with respect to the conversion of instruments than does the Tort Reform Act, the UCC controls." *Id.*

The Sixth Circuit's interpretation echoes an earlier decision from the Court of Appeals of New York, the highest court in that state. *See Putnam Rolling Ladder Co. v. Manufs. Hanover Trust Co.*, 74 N.Y.2d 340, 547 N.Y.S.2d 611, 546 N.E.2d 904, 908 (1989). Although *Putnam* involved former Article 3, its reasoning is instructive. Emphasizing the need for certainty in commercial transactions, the court refused to apply that state's comparative negligence provisions to UCC sections 3–406 and 4–406 (governing liability for forged instruments):

> [T]he UCC serves an important objective not shared by the law of torts. Unlike tort law, the UCC has the objective of promoting certainty and predictability in commercial transactions. By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution. These ends would not be fur-

thered by the introduction of the sort of fact inquiries necessitated by comparative negligence.

*Id.* (citation omitted); *see also Fed. Ins. Co. v. NCNB Nat'l Bank*, 958 F.2d 1544, 1551–52 (11th Cir.1992) (concluding that state comparative negligence principles were inapplicable under the UCC); *Govoni & Sons Constr. Co. v. Mechanics Bank*, 51 Mass.App.Ct. 35, 742 N.E.2d 1094, 1105–06 (2001) (holding that the UCC displaced the provisions of the Massachusetts comparative negligence statute, and refusing to apply that statute to a UCC-based claim for wrongful debit).

In this case, the Texas Legislature adopted Revised Article 3 in the same session in which it amended Chapter 33. As in *John Hancock*, there is a tension between these two statutes. It is unreasonable to assume that the Legislature intended to adopt the UCC's comprehensive liability scheme while simultaneously undoing that framework by mandating the application of Chapter 33 to UCC-based conversion claims.

We recently decided *F.F.P. Operating Partners v. Duenez*, —— S.W.3d ——, ——, 2004 WL 1966008 (Tex.2004), in which we reaffirmed that Chapter 33 applied to a cause of action arising under the Dram Shop Act, Texas Alcoholic Beverage Code Chapter 2. We noted that "[i]t is clear from Chapter 33's language that the Legislature intended all causes of action based on tort, unless expressly excluded, to be subject to apportionment." *Duenez*, —— S.W.3d at ——, 2004 WL 1966008 at *3. We also noted, however, that "the nature of the liability that the Dram Shop Act imposes on a provider does not render the proportionate responsibility statute meaningless, nor does Chapter 33's application undermine the Dram Shop Act's effect."

That is not the situation here. In this case, we are faced with a conflict between a uniform code adopted by the Texas Legislature and Chapter 33. As outlined above, applying Chapter 33 to a UCC-based conversion claim would "undermine the [UCC's] effect." *Id.* at ——. While we cannot say that the UCC's comparative negligence scheme renders the proportionate responsibility statute meaningless, we cannot reconcile the two without doing violence to the UCC.

The UCC, a uniform code, must be "liberally construed and applied to promote its underlying purposes and policies." Tex. Bus. & Com.Code § 1.103(a). Those underlying purposes and policies are: "(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) *to make uniform the law among the various jurisdictions.*" *Id.* § 1.103(a) (emphasis added); *see also* Tex. Gov't Code § 311.028 ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."). At the time Texas adopted Revised Article 3, thirty-three states had adopted it; today, it is the law in forty-eight states, the District of Columbia, and the Virgin Islands. Uniform Commercial Code Prec. § 3–101, 2 U.L.A. 4–6 (Supp. 2004); Daryl B. Robertson, *Report of the Commercial Code Committee of the Section of Business Law of the State Bar of Texas on Revised UCC Articles 3 and 4*, 47 Baylor L.Rev. 425, 431 (1995). Were we to impose Texas's proportionate responsibility scheme on Revised Article 3, parties litigating UCC-based conversion claims in Texas would face a unique liability scheme, overriding the UCC's express purpose of furthering uniformity among the states.

Additionally, the UCC is "carefully integrated and intended as a uniform codification of permanent character covering an entire 'field' of law, [and] is to be regarded as particularly resistant to implied repeal." Tex. Bus. & Com.Code § 1.104 cmt. 1; *see also* Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 1–104:3 (3d ed. 2003) ("In view of the considered and deliberate manner of preparing and adopting the UCC, it is obvious that a repeal of any of its provisions is not to be lightly assumed to have been intended by the legislature."). Given this express goal, we must be careful not to interpret any statute that does not explicitly amend or modify the UCC as doing so impliedly. By adhering to this discipline, we preserve the UCC's purposes and policies. *See* Tex. Bus. & Com.Code § 1.103(a).

Finally, Revised Article 3 is more specific than Chapter 33. *See Columbia Hosp. Corp. v. Moore,* 92 S.W.3d 470, 473 (Tex. 2002). Revised Article 3 contains its own loss allocation scheme uniquely applicable to conversion claims involving negotiable instruments. That scheme includes proportionate responsibility principles and specific causes of action against the thief and the depositary bank, as contrasted with Chapter 33's general proportionate responsibility scheme. Accordingly, Revised Article 3's terms govern.

## IV

### Conclusion

UCC Revised Article 3, as adopted in Texas, represents a comprehensive legislative fault scheme singularly applicable to claims involving negotiable instruments. Its provisions are more specific than Chapter 33, and they were adopted by the same Legislature that amended Chapter 33 to provide for responsible third party liability. We conclude that the Legislature did not intend to upset the UCC's carefully balanced liability provisions by applying Chapter 33 to a UCC-based conversion claim. To hold otherwise would ignore the UCC itself and thwart its underlying purpose. Accordingly, we affirm the court of appeals' judgment. In light of our holding, we do not reach ISC's conditional cross-petition regarding the availability of exemplary damages if Chapter 33 applies to its conversion claim.