Opinion issued April 13, 2006



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01035-CV




AMX ENTERPRISES, INC. N/K/A AMX ENTERPRISES, LLC, Appellant

V.

BANK ONE, N.A., Appellee




On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2003-33342




O P I N I O N

          In this Uniform Commercial Code (UCC) conversion appeal, appellant, AMX
Enterprises, Inc. n/k/a AMX Enterprises, LLC (AMX), challenges a summary
judgment rendered in favor of appellee, Bank One, N.A. In six issues on appeal,
AMX argues that the trial court erred in granting summary judgment on (1) Raymond
and Tobey Willies’ claim for tortious interference with contract; (2) AMX’s claim for
money had and received; (3) AMX’s claim for tortious interference with contract; (4)
AMX’s claim for common law conversion; (5) AMX’s claim for negligence; and (6)
AMX’s section 3.420(a) claim for statutory conversion, including interest, attorney’s
fees, and court costs.
          We affirm.
Background
          The facts are not disputed. Raymond and Tobey Willie, on their own and on
behalf of their mortgage company, CIT Group, contracted with AMX for mold
remediation services on their home. Under two contracts entered into between the
Willies and AMX, the Willies were to pay AMX $60,978 for its services less three
$500 deductions. After AMX fully performed under the contracts, the Willies’
insurer, Safeco Lloyds Insurance Company, issued three insurance checks on
September 30, 2002 that were each payable to “Raymond Willie & Tobey Willie &
Citi Group & AMX Enterprise.” In October 2002, all three checks were indorsed by
the Willies and forwarded to CIT Group with instructions to indorse the checks and
forward them to AMX. On October 29, 2002, instead of indorsing and sending the
checks to AMX, CIT Group presented the checks for deposit at Bank One. Bank One
accepted the checks even though AMX had never indorsed them. Bank One then
presented the checks to the drawee bank, the Northern Trust Company, which
forwarded the funds to Bank One. Bank One then deposited the funds into CIT
Group’s interest-bearing account. 
          On December 7, 2002, Safeco issued four additional settlement checks totaling
$71,149.38 to rebuild the Willies’ house. The Willies forwarded these checks to CIT
Group on February 15, 2003. On February 26, 2003, CIT Group deposited the four
checks into its Bank One account, and it issued three checks to “Raymond Willie III
Breckenridge Luxury Homes”


 the following day. 
          AMX made a written claim for $59,478 against Bank One on May 29, 2003. 
When these attempts to recover the funds from Bank One proved unsuccessful, AMX
filed suit on June 13, 2003 against Bank One, CIT Group, and the Willies. While the
lawsuit was pending, the Willies paid off their mortgage. On January 15, 2004, CIT
Group mailed a check in the amount of $59,478 to the Willies. After AMX settled
its claims with the Willies for $60,978 and non-suited them, the Willies assigned their
claims against CIT Group and Bank One to AMX. Shortly thereafter, on May 21,
2004, Bank One filed its motion for summary judgment, contending that AMX had
been paid in full and that other causes of action were preempted by the UCC. On
June 25, 2004, the trial court granted Bank One’s motion for summary judgment,
without stating its reasons, and held that AMX take nothing. The trial court also
denied AMX’s motion for new trial. On August 27, 2004, the trial court signed
AMX’s order of non-suit against CIT Group, thus making the judgment final. 
Standard of Review
          The standard of review in an appeal from a traditional summary judgment
requires a defendant moving for summary judgment on the plaintiff’s causes of action
to (1) show that there is no genuine issue of material fact as to at least one element
of each of the plaintiff’s causes of action or (2) establish each element of the
defendant’s affirmative defense. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).
In reviewing a traditional or a no-evidence summary judgment, we assume all the
evidence favorable to the nonmovant is true, indulge every reasonable inference in
favor of the nonmovant, and resolve any doubts in favor of the nonmovant. Ernst &
Young, L.L.P. v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). When,
as here, the trial court’s summary judgment order does not specify the ground or
grounds on which summary judgment is rendered, we will affirm the summary
judgment if any of the grounds stated in the motion is meritorious. Western Invs., Inc.
v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).
Discussion
          Bank One sought summary judgment on the following two grounds: (1) CIT
Group had paid AMX the full amount of the converted checks, thus triggering the one
satisfaction rule and (2) section 3.420 of the UCC preempts AMX’s causes of action
asserted against Bank One. AMX responded that 
CIT Group has never paid [AMX] any monies, much less the
insurance proceeds that it converted. The insurance proceeds that
it converted were paid out long ago to Breckenridge Luxury
Homes. The check that [CIT Group] wrote on January 15, 2004
was made payable to, and sent to, Raymond Willie (only after he
paid off his loan) and in such a manner that he could enforce and
negotiate the check without [AMX’s] endorsement. [AMX]
settled with the Willies after the Willies received the check. The
Willies paid the settlement in part with the proceeds of the
January 15, 2004 draft from [CIT Group]. This does not
constitute “payment” to [AMX] by [CIT Group]. Rather, it
constitutes funds paid by the Willies in settlement of [AMX’s]
breach of contract claim against them. 

One Satisfaction Rule
          The one satisfaction rule prohibits a plaintiff from recovering twice for a single
injury. Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 390 (Tex. 2000); Buccaneer
Homes of Alabama, Inc. v. Pelis, 43 S.W.3d 586, 589 (Tex. App.—Houston [1st
Dist.] 2001, no pet.). This rule applies when multiple defendants commit the same
act or when multiple defendants commit technically different acts that result in a
single injury. Casteel, 22 S.W.3d at 390. Moreover, the absence of tort liability does
not preclude the application of the one satisfaction rule. See El Paso Natural Gas Co.
v. Berryman, 858 S.W.2d 362, 364 (Tex. 1993) (holding that one satisfaction rule
does not allow plaintiff to recover from derivatively liable principal or alter ego when
plaintiff has already received full settlement on his claim). Whether the rule applies
is determined not by the cause of action asserted but by the injury sustained. See
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 8 (Tex. 1991). 
          Although it pled causes of action against Bank One for statutory and common
law conversion, negligence and gross negligence, tortious interference with contract,
and money had and received, AMX’s suit was predicated on one event as it related
to Bank One, namely, Bank One’s acceptance of checks when the checks were
missing AMX’s indorsements; Bank One, which does not dispute its act of depositing
CIT Group’s funds in CIT Group’s account, thus caused but a single injury to
AMX—the temporary loss of $59,478.


 
          On January 15, 2004, the Willies received $59,478 from CIT Group. In turn,
the Willies paid this sum to AMX in settlement of AMX’s breach of contract claims
against them. By accepting this settlement, AMX was compensated for its injury for
the temporary loss of $59,478 and, therefore, precluded from obtaining a second
recovery from Bank One. See Utts v. Short, 81 S.W.3d 822, 831 (Tex. 2002);
Sterling, 822 S.W.2d at 8; Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc., 176
S.W.3d 307, 326–27 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). To allow
AMX to recover twice for a single injury would violate the purpose of the one
satisfaction rule. See Utts, 81 S.W.3d at 831; Sterling, 822 S.W.2d at 8; Oyster Creek
Fin., 176 S.W.3d at 326–27.
Preemption by UCC Section 3.420
          AMX argues in its appellate brief that it “has never been compensated for its
loss-of-use of its $59,478. Therefore, this injury has never been satisfied.” It
contends that the monies it received from the Willies were in settlement of AMX’s
breach of contract claim against them, not in satisfaction of its claims against Bank
One. We disagree.
          Section 3.420 of the UCC specifically provides the measure of damages that
can be recovered in a statutory conversion claim. See Tex. Bus. & Com. Code Ann.
§ 3.420 (Vernon 2002). Section 3.420 states that “the measure of liability is
presumed to be the amount payable on the instrument, but recovery may not exceed
the amount of the plaintiff’s interest in the instrument.” Id. § 3.420(b). Section 3.420
of the UCC preempts common law causes of action that supplant the provisions of the
UCC in a suit to recover losses involving negotiable instruments. See id. § 1.103 cmt.
2 (Vernon Supp. 2005). Section 3.420 provides, in pertinent part, 
The law applicable to conversion of personal property applies to
instruments. An instrument is also converted if it is taken by
transfer, other than a negotiation, from a person not entitled to
enforce the instrument or a bank makes or obtains payment with
respect to the instrument for a person not entitled to enforce the
instrument or receive payment. 

Id. § 3.420(a). “UCC Revised Article 3, as adopted in Texas, represents a
comprehensive legislative fault scheme singularly applicable to claims involving
negotiable instruments.” See Southwest Bank v. Information Support Concepts, Inc.,
149 S.W.3d 104, 111 (Tex. 2004). The UCC “was drafted against the backdrop of
existing bodies of law, including the common law and equity, and relies on those
bodies of law to supplement it[s] provisions in many important ways.” Tex. Bus. &
Com. Code Ann. § 1.103 cmt. 2. Thus, “while principles of common law and equity
may supplement provisions of the [UCC], they may not be used to supplant its
provisions, or the purposes and policies those provisions reflect, unless a specific
provision of the [UCC] provides otherwise. . . . [T]he [UCC] preempts principles of
common law and equity that are inconsistent with either its provisions or its purposes
and policies.” Id. Accordingly, any common law theory of recovery that allows a
plaintiff to exceed the maximum amount of liability as stated in section 3.420 is
preempted. See id. 1.103(a), (b), and cmt. 2.
          By its plain reading, AMX’s interest in the instrument is $59,478. See Ames
v. Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984) (holding that, under former
section 3.419(b), bank which pays funds in breach of contract on missing indorsement
is liable for face amount of instrument”).


 AMX recovered more than that amount
from the Willies. Under UCC section 3.420(b), AMX is precluded from recovering
the same loss under different theories against different parties. 
          We agree that AMX’s breach of contract claim against the Willies is
technically a different cause of action than the conversion claim asserted against Bank
One. Nonetheless, both causes of action are based on AMX’s right to recover for the
temporary loss of $59,478, which resulted in a single injury to AMX. See Cohen v.
Arthur Andersen, L.L.P., 106 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2003,
no pet.). Accordingly, we hold that because AMX accepted $59,478 from the Willies,
section 3.420 of the UCC and the one satisfaction rule preclude AMX from
recovering additional damages from Bank One. 
          We overrule AMX’s second, third, fourth, and fifth issues on appeal.
Loss-of-Use of Money
          In its sixth issue on appeal, AMX contends that the trial court erred by not
allowing recovery of the face amount of the checks,


 plus attorney’s fees, interest,
court costs, and loss-of-use damages pursuant to its statutory conversion claim under
section 3.420 of the UCC.


 
          AMX provides no authority that section 3.420 allows for the recovery of
attorney’s fees, interest, court costs, or loss-of-use damages. It is a well-settled rule
of statutory construction that we must presume that every word of a statute has been
used for a purpose. Laidlaw Waste Sys., Inc. v. Wilmer, 904 S.W.2d 656, 659 (Tex.
1995). Likewise, we must presume that every word excluded from a statute has been
excluded for a purpose. Id. Under the facts presented here, we conclude that section
3.420 allows AMX to recover no more than $59,478. 
          We note that other sections in the Code support our interpretation of section
3.420.


 Section 3.411(b) states that, “If the obligated bank wrongfully (i) refuses to
pay a cashier’s check or certified check, . . . the person asserting the right to enforce
the check is entitled to compensation for expenses and loss of interest resulting from
the nonpayment and may recover consequential damages if the obligated bank refuses
to pay after receiving notice of particular circumstances giving rise to the damages.” 
Tex. Bus. & Com. Code Ann. § 3.411 (b) (Vernon 2002). Also, section 3.416 states
that “A person . . . who took the instrument in good faith may recover from the
warrantor as damages for breach of warranty an amount equal to the loss suffered as
a result of the breach, but not more than the amount of the instrument plus expenses
and loss of interest incurred as a result of the breach.” Tex. Bus. & Com. Code Ann.
§ 3.416 (b) (Vernon Supp. 2005). These two sections indicate that the drafters knew
how to allow for a plaintiff to recover additional damages beyond the face value of
the check. Because section 3.420 does not specifically allow a plaintiff to recover
attorney’s fees, interest, court costs, or loss-of-use on a check that has been
converted, we conclude that the trial court properly ordered that AMX takes nothing. 
          We overrule AMX’s sixth issue on appeal.
                                   Tortious Interference With Contract
          In its first issue on appeal, AMX argues that the trial court erred when it
granted summary judgment on the tortious interference with contract claim which the
Willies assigned to it. In its second amended petition, AMX pled the following: 
Bank One interfered with the contracts between the Willies and
[AMX] by accepting for deposit and obtaining payment on the
three checks in question without [AMX’s] endorsement. Bank
One also interfered with the contracts between the Willies and
[AMX] when it ignored [AMX’s] written claim and thereby
subjected the Willies to a lawsuit by [AMX] for non-payment on
the contracts.
 
Bank One prevented the Willies from being able to meet their
contractual payment obligations to [AMX] and directly caused the
Willies to breach their contracts with [AMX], when it accepted
and obtained payment on the checks without [AMX’s]
endorsement, and when it subsequently ignored [AMX’s] written
claim.
 
The Willies were directly harmed by Bank One’s interference
because it subjected them to a lawsuit by [AMX] for nonpayment.

          To recover for tortious interference with contract, a plaintiff must prove (1) the
existence of a contract subject to interference; (2) a willful and intentional act of
interference; (3) a proximate cause of the plaintiff’s damages by that act; and (4)
actual damages or loss. Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex.
1996). 
          As AMX’s pleadings show, the Willies’ assigned cause of action is based on
Bank One’s conversion pursuant to section 3.420 of the UCC. AMX pled that the
Willies’ damages are the act of being sued by AMX. Even if AMX could show that
Bank One tortiously interfered with the Willies’ contract with AMX, the Willies
would still be limited to the damages provided for in section 3.420.


 Because section
3.420 does not allow recovery for the damages AMX seeks, the trial court properly
granted summary judgment on the assigned tortious interference with contract claim.
 
 
 
 
 
 
                                                         Conclusion
          We affirm the judgment of the trial court.
 
 
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Hanks.