IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF
TEXAS

 

════════════

No. 02-0381

════════════

 

F.F.P.
Operating Partners, L.P., D/B/A Mr. Cut Rate #602, Petitioner,

 

v.

 

Xavier
Duenez and Wife Irene Duenez, as Next Friends of Carlos Duenez and Pablo
Duenez, Minors, Respondents

 

════════════════════════════════════════════════════

On Petition for
Review from the

Court of Appeals
for the Thirteenth District of Texas

════════════════════════════════════════════════════

 

 

Argued on November 30, 2005

 

 

Chief Justice Jefferson, dissenting.

 

If a bar sells liquor to a person so
“obviously intoxicated” that he is “a clear danger to himself and others,” to
what extent does the sale “proximately cause” the harm that person inflicts
when he gets behind the wheel? The Legislature has answered that it does not
matter. If the bar sells to a drunk, it must pay damages when the drunk’s
intoxication (not the provider’s sale) causes the sort of trauma that forms the
heart of this case. The Legislature plainly believes that deterring such a sale
is sound public policy. By imposing potentially crippling financial penalties
on those who ignore its dictates, the statute has the salutary effect of
enlisting providers in the state’s campaign against drunk driving. Under the
Court’s construction, however, the bar may avoid liability precisely because
its patron was so “obviously intoxicated” and such a “clear danger” that the
sale could not have proximately caused carnage on a Texas road. The dram shop
thus has a perverse incentive to establish at trial that its customer was in
such a drunken state that selling him “one for the road” could not have
contributed to the harm his intoxication later caused. I cannot agree that the
Legislature intended as a defense to liability proof that the dram shop
completed a sale that the statute quite sensibly forbids. 

The Court relies heavily on our opinion
in Sewell, but as I demonstrate below, the Court’s reliance on that case
only perpetuates our prior error in interpreting the Dram Shop Act. See
Smith v. Sewell, 858 S.W.2d 350, 356 (Tex. 1993). I would hold, contrary to
Sewell, that the Legislature has imposed a form of vicarious liability
on a dram shop for the acts of its intoxicated customer. Because the shop’s
conduct is statutorily irrelevant in relation to the plaintiff’s injury, there
is no legitimate basis for comparing its responsibility with that of the
intoxicated person.

I

Vicarious Liability and the Dram Shop Act

The question here is whether and, if so,
how chapter 33’s proportionate responsibility scheme applies to claims based on
the Dram Shop Act. Our separate writings in this case demonstrate that the
statutes are not easily harmonized. See also Fid. & Guar. Ins.
Underwriters Inc. v. Wells Fargo Bank, No. H-04-2833, 2006 U.S. Dist. LEXIS
23545, at *17 (S.D. Tex. Mar. 31, 2006) (noting that “courts and commentators
alike have recognized the difficulty in reconciling the language of the
Proportionate Responsibility Statute with certain causes of actions, including
vicarious and/or derivative liability actions”). This is not the first time we
have struggled to reconcile chapter 33 with another statute’s terms. See,
e.g., Southwest Bank v. Info. Support Concepts, Inc., 149 S.W.3d 104, 111
(Tex. 2004) (concluding that, even assuming a UCC conversion claim is a tort,
“the Legislature did not intend to upset the UCC’s carefully balanced liability
provisions by applying Chapter 33 to a UCC-based conversion claim” and “[t]o
hold otherwise would ignore the UCC itself and thwart its underlying purpose”).
Nor have we been the only court to recognize exceptions to the statute’s
apportionment scheme. See, e.g., Fid. & Guar. Ins. Underwriters,
2006 U.S. Dist. LEXIS 23545, at *18 (“Although the language of the statute
itself indicates a clear legislative preference for apportionment of
responsibility in all tort actions, it is equally clear that an apportionment
scheme is not proper in certain cases.”); Rosell v. Cent. W. Motor Stages,
Inc., 89 S.W.3d 643, 656-57 (Tex. App.—Dallas 2002, pet. denied). 

The Court and Justice O’Neill
would submit both the provider and the intoxicated person in the apportionment
question, the Court employing it to reduce the dram shop’s liability and Justice O’Neill to facilitate the
shop’s contribution action against the intoxicated tortfeasor. While I concede
that Sewell supports a comparative submission of the provider and the
intoxicated person, such a submission is inconsistent both with the provider’s
essentially vicarious liability and chapter 33’s mandate to apportion liability
only among those causing the harm at issue. The Court holds that dram shop
liability cannot be vicarious, reiterating our holding in Sewell that
such liability is based on the provider’s own conduct. Justice O’Neill writes that liability is both direct and
vicarious, as it includes the provider’s wrongful sale and imputes to the
provider the harm caused by the drunk’s intoxication. I disagree with those
interpretations. To give effect to each statute, we must acknowledge that the
Dram Shop Act imposes a form of vicarious liability.

Both the Dram Shop Act and chapter 33
support such an interpretation. While liability under the Dram Shop Act is
premised on the provider’s sale, the requisite causal link focuses solely on
the drunk’s actions. Once alcohol is provided to a person so “obviously
intoxicated to the extent that he presented a clear danger to himself and
others,” the provider’s role is complete. See Tex. Alco. Bev. Code § 2.02(b)(1). From that point forward,
any harm caused by the intoxicated person is imputed to the provider; indeed,
for purposes of the Dram Shop Act, the provider virtually becomes the drunk.
Hence, the only causation required under the statute focuses on the intoxicated
person’s, not the dram shop’s, actions. Id. § (b)(2) (requiring proof
that “the intoxication of the recipient of the alcoholic beverage was a
proximate cause of the damages suffered”) (emphasis added).

F.F.P. concedes that, under the Dram Shop
Act, the provider’s actions need not be a cause-in-fact of the harm.[1]
Earlier versions of the act included such an element, but the Legislature
deleted it before the statute was enacted. Compare Tex. C.S.H.B. 1652,
70th Leg., R.S. (1987) (Dram Shop Act claim requires proof that “the provider
was the last known contributor to the intoxication of the recipient; and that
the recipient consumed no alcoholic beverage subsequent to that served by the
last contributor”) with Tex.
Alco. Bev. Code § 2.02(b) (containing no such requirement). Instead,
unlike other states,[2] the Texas statute imposes liability
even absent causation relating to the provision of alcohol.[3] If the
dram shop’s conduct need not be a substantial factor in bringing about the
injury, which otherwise would not have occurred, then it cannot be said to have
caused or contributed to the accident. See Union Pump Co. v. Allbritton, 898
S.W.2d 773, 775 (Tex. 1995).

That Texas omitted such a requirement is
significant. Chapter 33 requires apportionment among claimants, defendants,
settling persons, and responsible third parties, but not all such persons are
submitted in the apportionment question. See Tex. Civ. Prac. & Rem. Code § 33.003. Instead, chapter 33
imposes an important limitation on the allocation of responsibility: Only
those persons who “caus[ed] or contribut[ed] to cause in any way the harm for
which recovery of damages is sought” must be included in apportioning
responsibility for that harm. Tex. Civ.
Prac. & Rem. Code §§ 33.003, 33.011(4) (emphasis added); William D.
Underwood & Michael D. Morrison, Apportioning Responsibility in Cases
Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm
Directly Caused by Another, 55 Baylor
L. Rev. 617, 638 (2003) (footnote omitted) (hereinafter “Apportioning
Responsibility”) (“[U]nder section 33.003, the jury apportions
responsibility among only those persons whose conduct caused or contributed
to cause the plaintiff’s injury.”). This restriction is “especially significant”
in cases involving claims against persons whose liability is vicarious: 

 

A person whose liability was purely
vicarious had not personally engaged in “conduct or activity” that had “caused
or contributed to cause” the harm. Liability was based instead entirely on the
relationship between the person whose tortious conduct proximately caused the
harm and the person who was vicariously responsible. Thus, rather than
allocating responsibility among persons directly liable and persons vicariously
liable, whatever responsibility existed for persons directly liable was simply
passed on to persons vicariously liable. The vicariously liable defendant
essentially stepped into the shoes of the tortfeasor who was directly
responsible and assumed that person’s responsibility to the claimant.

 

Id. at 628-29 (footnote omitted). Because the inquiry involves
the harm for which recovery of damages is sought, “it is obvious that it
concerns only the primary conduct of the active participants in the event,
accident, or physical episode giving rise to the injuries complained of by the
claimant, and the causational role of that primary conduct in the episode.”
Carl David Adams, The “Tort” of Civil Conspiracy in Texas, 54 Baylor L. Rev. 305, 315 (2002); Gregory
J. Lensing, Proportionate Responsibility and Contribution Before and After
the Tort Reform of 2003, 35 Tex.
Tech L. Rev. 1125, 1184-86 (2004) (noting that “[i]t is problematic to
assign the jury the task of apportioning responsibility between the intoxicated
person and the dram shop when the dram shop’s statutory liability is not
necessarily based on true responsibility for the accident, in the sense of
causing the accident, at all”). 

Courts applying chapter 33’s
apportionment scheme in negligent entrustment cases—a variant of vicarious
liability—have used similar reasoning to conclude that an entrustor should not
be included in the apportionment question. In Rosell v. Central West Motor
Stages, Incorporated, the Rosells, plaintiffs in a wrongful death and
survival action, contended that the trial court erred by refusing to submit
Central West, employer of the allegedly negligent bus-driver and owner of the
vehicle that struck and killed their son, in the jury’s apportionment question.
The court of appeals disagreed:

 

The Rosells contend that Central West
should be included because it was a producing or contributing cause of the
injuries to Chad. Although negligent entrustment and negligent hiring are
considered independent acts of negligence, these causes are not actionable
unless a third party commits a tort. In that respect, these causes are similar
to the respondeat superior theory of recovery where, unless the employee
commits a tort in the scope of employment, the employer has no responsibility.
In reviewing the application of section 33.003 to responsibility, we observe
that, while the statute on its face requires all defendants to be included in
the apportionment question, it would not be proper for an employer to be
included along with the driver if its only responsibility was that of
respondeat superior. Section 33.003 has not been used to require both a driver
and employer to be submitted in the apportionment question in that situation.

 

Similarly, the causes of action for
negligent entrustment and hiring are a means to make a defendant liable for the
negligence of another. Once negligent hiring or entrustment is established, the
owner/employer is liable for the acts of the driver, and the degree of
negligence of the owner/employer is of no consequence. Thus, because Rieve’s
negligence would be passed on, it was proper to apportion fault among those
directly involved in the accident.

 

Rosell, 89 S.W.3d at 656-57 (citations and footnote omitted).

Even before chapter 33’s 1995 amendments,
courts engaged in similar analysis to conclude that the entrustor should not be
included in an apportionment question. In Loom Craft Carpet Mills,
Incorporated v. Gorrell, the court of appeals noted that:

 

Negligent entrustment liability is
derivative in nature. While entrusting is a separate act of negligence, and in
that sense not imputed, it is still derivative in that one may be extremely
negligent in entrusting and yet have no liability until the driver causes an
injury. If the owner is negligent, his liability for the acts of the driver is
established, and the degree of negligence of the owner would be of no
consequence. When the driver’s wrong is established, then by negligent
entrustment, liability for such wrong is passed on to the owner. We believe the
better rule is to apportion fault only among those directly involved in the
accident, and to hold the entrustor liable for the percentage of fault
apportioned to the driver.

 

Loom Craft, 823 S.W.2d 431, 432 & n.7 (Tex.
App.—Texarkana 1992, no pet.) (declining to follow cases from other
jurisdictions in which fault was apportioned to the entrustor); see also
Wyndham Hotel Co. v. Self, 893 S.W.2d 630, 640 (Tex. App.—Corpus Christi
1994, writ denied); Rodgers v. McFarland, 402 S.W.2d 208, 210
(Tex. App.—El Paso 1966, writ ref’d n.r.e.) (noting that, in a negligent
entrustment case, “[t]he proximate cause of the accident or the occurrence is
the negligence of the driver and not that of the owner”).

More recently, the Fort Worth Court of
Appeals grappled with the proper submission of a negligent entrustment claim. Bedford
v. Moore, 166 S.W.3d 454 (Tex. App.—Fort Worth 2005, no pet.). Based in
part on this Court’s now-withdrawn opinion in this case, the court concluded
that the entrustor should be submitted in the apportionment question. The court
then held, however, that failure to submit the entrustor was not reversible
error: 

 

There were only two people involved in
the accident. Therefore, the submission of the acts of “other parties” whose
actions preceded the actions of [the driver] at the time of the accident could
only have contributed to her actions at the accident scene, that is, to her
forty percent negligence. In other words, because there were only two parties
involved in the incident, the jury has decided how those actions at the time of
the accident should be apportioned as far as responsibility is concerned. What
led up to those actions at the time of the accident does not change those
actions at the accident scene but can only be subparts of those respective responsibilities.
[The entrustors] did not cause [the plaintiff] to cross the highway or [the
driver] to strike that truck. Therefore . . . we conclude that it was harmless
error to omit them from those questions.

 

Bedford, 166 S.W.3d at 464.[4] This passage captures
the proper submission in a vicarious liability case: If, in fact, the
entrustor’s share of responsibility is merely a “subpart” of the entrustee’s
share, then the entrustor should not be submitted separately. Only the
entrustee should be submitted, and his or her negligence would then be imputed
to the entrustor as a matter of law.

Under similar reasoning, even after
chapter 33’s 1995 amendments, the provider should not be included in the
apportionment question. The Dram Shop Act is “intended to deter providers of
alcoholic beverages from serving alcoholic beverages to obviously intoxicated
individuals who may potentially inflict serious injury on themselves and on
innocent members of the general public.” Sewell, 858 S.W.2d at 356. The
Court’s holding runs counter to that policy. As commentators recognize:

 

If a person whose conduct creates a
foreseeable risk of misconduct by another (in other words, a person whose liability
is derivative) can largely escape responsibility simply because the very event
which made his own conduct wrongful in the first place actually occurs, then
the incentive to take precautions against the risk is substantially reduced.
This concern is especially great when the foreseeable event is a crime of
violence given the likelihood that a jury, when asked to apportion
responsibility between a person who commits a crime of violence and a person
whose conduct simply involved facilitating that crime through negligence, might
be expected to apportion most of the responsibility to the person who actually
committed the crime. Allocating responsibility in cases of vicarious or
derivative liability would not only be bad policy, but has not traditionally
been how Texas courts have interpreted and applied the allocation of
responsibility provisions in Chapter 33. Moreover, nothing in the language or
the legislative history of the 1995 tort reform revisions to the allocation of
responsibility provisions of Chapter 33 either requires or justifies departure
from the traditional rule that juries are not asked to allocate responsibility
between persons who are directly liable and persons whose liability is either
derivative or vicarious. 

 

Apportioning Responsibility, 55 Baylor
L. Rev. at 624-25 (footnotes omitted). Thus, “given that causation is
imputed to the provider in an action under the [Dram Shop] Act, section 33.003
neither contemplates or permits the apportionment of responsibility between the
intoxicated patron and the provider in an action brought by an injured third
party.” Id. at 642. This approach is supported by the Restatement, which
provides that “[a] person whose liability is imputed based on the tortious acts
of another is liable for the entire share of comparative responsibility
assigned to the other, regardless of whether joint and several liability or
several liability is the governing rule for independent tortfeasors who cause
an indivisible injury.” Restatement
(Third) of Torts: Apportionment of Liability § 13 (2000).

The Court concludes that it is improper
to analogize dram shop claims to other vicarious liability situations, because
those situations typically rely on a right of control or an employer/employee
relationship, which may be absent in a dram shop situation. In this case,
however, the Legislature chose to impose vicarious liability for Dram Shop Act
claims and consciously opted to omit control as a prerequisite. That the
justification for doing so may not comport with the rationale for common-law
vicarious liability is beside the point.

The Court reasons that, because the Dram
Shop Act was not among the explicit exceptions to proportionate liability set
forth in chapter 33, it must be included. This is not necessarily so. As we recognized
in Southwest Bank, if another statute enacts a comparative
responsibility scheme, chapter 33 will not govern a claim brought under the
other statute, notwithstanding that the other statute is not among chapter 33’s
enumerated exceptions. See Southwest Bank, 149 S.W.3d at 111. Nor did
the Legislature exclude negligent entrustment or respondeat superior claims
from the reach of chapter 33. Applying the Court’s logic, by omitting those
actions the Legislature intended that employers or entrustors must be submitted
in an apportionment question even though their liability is purely vicarious.
More likely, the Legislature never envisioned that a court would include in the
apportionment question persons whose only liability was vicarious.

The Court’s decision to include the
provider in the apportionment question would first necessitate an inquiry
otherwise unnecessary under the Dram Shop Act: whether the provider’s conduct
caused or contributed to cause the plaintiff’s injuries. Apportioning
Responsibility, 55 Baylor L. Rev.
at 638. 

 

If the jury’s answer was no, then under
the express language of section 33.003, the jury could not consider the
provider in apportioning responsibility. Since no responsibility could be
apportioned to the provider, one possible result would be that the provider
would not be liable for any of the plaintiff’s damages. This result would have
the effect of rewriting the Dram Shop Act to read into the Act a causation
requirement that simply is not there. The provider would always escape all
responsibility unless the jury found a causal connection between the provider’s
conduct and the plaintiff’s injury. That result obviously would be wrong. 

 

Id. (footnote omitted) (emphasis added). The Legislature meant
to make providers liable whether or not their conduct played a causative
role in subsequent harm. The Court’s holding eviscerates that policy choice and
requires that the Duenezes prove not only that Ruiz consumed F.F.P.’s alcohol,
but also that his consumption so aggravated the danger he posed pre-sale that
the sale (and not just his prior intoxicated condition) “caused” the ultimate
harm. But the statute does not require that the patron consume the alcohol,
that the sale aggravate the patron’s prior intoxication, or that the provider
play any role in causing or contributing to the accident. Ironically, under the
Court’s interpretation, the provider now has an incentive to establish that its
patron was so drunk at the time of sale that its conduct could not, as a matter
of law, have contributed to the harm the patron ultimately caused. As a result,
the very instrument that the Legislature employed to deter drunk driving
(liability for serving a drunk) becomes a means to escape responsibility
entirely. 

Joining the intoxicated person as a
responsible third party does not change this result. See Tex. Civ. Prac. & Rem. Code §
33.011. As commentators have noted: 

 

By adding the [responsible third party
language] to section 33.003, the Texas legislature clearly intended to change
existing law regarding the apportionment of responsibility among tortfeasors
with direct liability. But there is absolutely no indication in either the
legislative history or the text of the amended apportionment of responsibility
provisions of Chapter 33 that the legislature intended to now permit
apportionment of responsibility among directly liable tortfeasors and those
whose liability was only derivative or vicarious. 

 

Apportioning Responsibility, 55 Baylor
L. Rev. at 631. Whatever percentage of responsibility is attributed to
the drunk should be imputed to the provider, who may then seek indemnity from
the intoxicated person. Cf. Bonniwell v. Beech Aircraft Corp., 663
S.W.2d 816, 819-20 (Tex. 1984).

II

Sewell and Third-Party Actions 

 

If I were writing on a clean slate, my
analysis could end here. But in Smith v. Sewell, we determined that
“[chapter 33] is applicable to Chapter 2 causes of action” and held that “an
intoxicated person suing a provider of alcoholic beverages for his own injuries
under Chapter 2 will be entitled to recover damages only if his percentage of
responsibility is found to be less than or equal to 50 percent.” Sewell,
858 S.W.2d at 356. Although our holding was not limited to first-party claims (i.e.
a drunk suing a dram shop), our reasoning arguably supports such a limitation:

 

Chapter 2 is intended to deter providers
of alcoholic beverages from serving alcoholic beverages to obviously
intoxicated individuals who may potentially inflict serious injury on themselves
and on innocent members of the general public. But when it is the intoxicated
individual who is injured due to his own intoxication, it is particularly
appropriate that his conduct in contributing to his injury should be considered
in assessing the amount of recovery, if any, to which he is entitled.
Application of the principles of comparative responsibility to causes of action
brought under Chapter 2 establishes a consistent and equitable approach to the
issue of “dramshop liability” generally, and first party “dramshop liability”
specifically. This approach provides an effective solution to a difficult and
controversial issue. 

 

Id. 

Even if limited to first-party claims,
however, Sewell presents another, more difficult, problem. In Sewell,
we held—incorrectly, in my opinion—that a provider should be included in the
apportionment question because its conduct violated an applicable legal
standard. Sewell, 858 S.W.2d at 356 (quoting “percentage of
responsibility” definition and holding that “[b]ecause Chapter 2 clearly
establishes a legal standard and creates a cause of action for conduct
violative of that legal standard, the definition of ‘percentage of
responsibility’ provides additional support for our determination that the
Comparative Responsibility Act is applicable to Chapter 2 causes of action”).
Implicitly, therefore, we held that the provider in a dram shop case must have
“caused or contributed to cause” the harm for which recovery of damages was
sought. For the reasons set forth above, that simply need not be the case.
While Sewell remains workable for first-party claims, as apportionment
between the drunk and the provider approximates what would occur in an
indemnity action,[5] Sewell’s reasoning breaks down
when applied to third-party dram shop actions. Submitting both the drunk and
the provider as parties who “caused or contributed to cause” the harm, rather
than imputing the drunk’s actions to the provider, would allow the provider to
lessen or escape liability altogether. 

Thus, for example, a jury could determine
that a provider’s “percentage of responsibility” is zero—a not unlikely
scenario given that the provider’s actions are compared with a person so
obviously intoxicated he posed a danger to himself and others—notwithstanding
that the drunk’s intoxication proximately caused the harm. This contravenes the
purpose as well as the text of the Dram Shop Act, which imposes liability even
absent causation relating to the provision of alcohol, and is unnecessary to a
proper application of chapter 33. See Tex.
Alco. Bev. Code § 1.03 (requiring that the Dram Shop Act be liberally
construed to accomplish its purpose of protecting the welfare, health, and
safety of the people). “To paraphrase Dean Prosser, it simply cannot be the law
that a defendant can be relieved of the consequences of his wrongful conduct by
the occurrence of the very risk which made his conduct negligent in the first
instance.” Apportioning Responsibility, 55 Baylor L. Rev. at 650. 

In Sewell, we were faced with a
person suing a dram shop for damages he suffered in a one-car accident due to
his own intoxication. Although Sewell correctly held that chapter 33
applies to first-party Dram Shop Act claims, its holding regarding the
submission of the provider in the apportionment question cannot apply to
third-party claims, and its reasoning for that submission does not comport with
the statute’s terms. Thus, I would limit Sewell to first-party claims
and overrule its holding that the provider is properly included within those
persons who caused the harm. 

III

Conclusion

 

The Legislature, confronting a serious
question of public health, enacted a strong deterrent to curb the plague of
drunk driving in Texas. If a provider sells to a drunk, it must answer in
damages for the injury its patron’s intoxication visits upon an innocent
person, even if the sale is not itself the proximate cause. The policy reflects
a concern not only for the victim. It is a comprehensive approach designed to
discourage the sale of liquor to a person whose intoxication poses an obvious
danger to the public. Faced with the specter of catastrophic financial loss, a
provider is more likely to intervene (for selfish interests, and to the public
good) by closely monitoring a customer’s alcohol intake, by refusing to serve
more liquor to an obviously drunk person and, where appropriate, by offering to
arrange alternative transportation or by alerting law enforcement. At a
minimum, the provider has a direct incentive to enroll its employees in
training that emphasizes how to recognize the debilitating effects of excessive
alcohol consumption and offers methods to avoid its devastating consequences. See
Tex. Alco. Bev. Code § 106.14(a).
Considerations like these justify the Legislature’s intentional omission of a
proximate cause element with respect to the provider’s sale. The Court’s
insertion of that defense, contrary to the statute’s terms, seriously
undermines an important deterrent. 

In an appeal to cozening hope, the Court
offers that a jury will not always assign most of the responsibility to
a provider’s patron. ___ S.W.3d at ___. The Duenezes will take cold comfort in
that pronouncement. The record shows that Ruiz—already so intoxicated that he
was a clear danger to others before F.F.P. completed the sale—drank, at most,
one more beer in 1.5 miles of highway driving afterwards. Under the legal
sufficiency standards announced in City of Keller v. Wilson, 168 S.W.3d
802 (Tex. 2005), that evidence will never support a finding that F.F.P. caused
the accident. The Court’s remand for a new trial is, in reality, a decree of
rendition. 

I would affirm the court of appeals’
judgment.[6] See Tex. R. App. P. 60.2(a).

 

______________________________

 

Wallace B. Jefferson

Chief Justice 

 

 

 

OPINION DELIVERED:     November 3,
2006       

 


















[1] F.F.P.’s reply brief asserts,
correctly, that “[u]nder [the statutory] elements, the dram shop plaintiffs need
not prove that ‘but for’ the alcohol seller’s conduct, the harm would not have
occurredCpresumably because it will always be hard
to prove that any injury occurred because of any particular sale of alcoholic
beverage.” 





[2] Some states require that the dram
shop’s provision of alcohol cause the harm. See, e.g., Ark. Code § 16-126-104 (2006)
(requiring jury in dram shop case to determine “whether or not the sale constitutes
a proximate cause of any subsequent injury to other persons”) (emphasis added);
Ga. Code § 51-1-40 (2000) (“[A]
person who . . . knowingly sells, furnishes, or serves alcoholic beverages to a
person who is in a state of noticeable intoxication, knowing that such person
will soon be driving a motor vehicle, may become liable for injury or damage
caused by or resulting from the intoxication of such minor or person when
the sale, furnishing, or serving is the proximate cause of such injury or
damage.”) (emphasis added); Mich.
Comp. Laws § 436.1801 (2001) ( “[A]n individual who suffers damage or
who is personally injured by a minor or visibly intoxicated person by reason of
the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or
visibly intoxicated person, if the unlawful sale is proven to be a proximate
cause of the damage, injury, or death, or the spouse, child, parent, or
guardian of that individual, shall have a right of action in his or her name
against the person who by selling, giving, or furnishing the alcoholic
liquor has caused or contributed to the intoxication of the person or who has
caused or contributed to the damage, injury, or death”) (emphasis added); Tenn. Code § 57-10-102 (2002)(imposing
liability if a jury finds, “beyond a reasonable doubt that the sale by
such person of the alcoholic beverage or beer was the proximate cause of the
personal injury or death sustained and that such person . . . [s]old the
alcoholic beverage or beer to an obviously intoxicated person and such person caused
the personal injury or death as the direct result of the consumption of the
alcoholic beverage or beer so sold”) (emphasis added). 





[3] This may seem punitive, as it risks
imposing liability without fault, but the Legislature also provides a relatively
cost-free safe harbor: the trained server defense. As the Court’s original
opinion noted, section 106.14(a) provides that “the actions of an employee
shall not be attributable to the employer if” the provider establishes that it
required the employee to attend a training course approved by the Texas
Alcoholic Beverage Commission, the employee actually attended the course, and
the provider did not encourage the employee to violate the Alcoholic Beverage
Code. Act of May 21, 1987, 70th Leg., R.S., ch. 582, § 3, 1987 Tex. Gen. Laws
2298, 2299 (amended 2003) (current version at Tex.
Alco. Bev. Code § 106.14(a)). 





[4] On the failure-to-submit issue,
Chief Justice Cayce concurred in the result only, as he felt that the sixty-percent
responsibility the jury placed on the plaintiff barred her recovery as a matter
of law, rendering harmless any error in failing to submit the employer’s
negligence. Bedford, 166 S.W.3d at 456 (Cayce, C.J., concurring).





[5] See B & B Auto Supply, Sand
Pit, & Trucking Co. v. Cent. Freight Lines, Inc., 603 S.W.2d 814, 817
(Tex. 1980) (recognizing common law right to indemnity when a party’s liability
is vicarious).





[6] F.F.P. also contends the trial
court erred in refusing to instruct the jury on sole proximate cause. F.F.P.
bases its claimed entitlement to that instruction on evidence that Ruiz was
reaching under the seat for a compact disc when the accident occurred, and it
was this inattention, rather than Ruiz’s intoxication, that caused the
accident. The court of appeals held that Ruiz’s carelessness was
indistinguishable from his intoxication and, therefore, the trial court did not
abuse its discretion in refusing to give the requested instruction. 69 S.W.3d
at 809. In this Court’s original opinion, the Court concluded that, as “[t]he
instruction . . . ask[ed] the jury to compare the actions of two different
people rather than distinguish between the same person’s intoxication and
inattention[,] [t]he requested instruction would not have focused the jury’s
attention on the act that F.F.P. contends was the sole proximate cause of the
Dueñezes’ injuries; thus, the trial court did not err in refusing to submit
it.” I agree with both the court of appeals and the Court’s original opinion on
this point.